585 So.2d 1205 (1991)
Irma WHITE
v.
MONSANTO COMPANY and Gary McDermott.
No. 91-C-0148.
Supreme Court of Louisiana.
September 9, 1991.
Rehearing Denied October 10, 1991.
Concurring in Denial of Rehearing October 11, 1991.
*1206 Norman A. Mott, III, James A. Nugent, Littler, Mendelson, Fastiff & Tichy, for defendant-applicant.
Gerald E. Meunier, Gainsburgh, Benjamin, Fallon, & Ates, for plaintiff-respondent.
Clyde H. Jacob, III, Kullman, Inman, Bee, Downing & Banta, for Louisiana Ass'n of Business and Industry, amicus curiae.
*1207 HALL, Justice.
Writs were granted in this case to review a judgment of the court of appeal affirming an award of $60,000 damages to an employee against her employer and a supervisory co-employee for intentional infliction of emotional distress occasioned by the supervisor's profane outburst while dressing down the employee and two other employees for not working as he thought they should. Finding that the supervisor's conduct, although crude and uncalled for, was not of such an extreme or outrageous nature as to give rise to a cause of action for an intentional tort, we reverse and render judgment for the defendants.

I.
Plaintiff, Irma White, a church-going woman in her late forties with grown children, was employed in the labor pool at Monsanto Company's refinery for several years. In the spring of 1986, she had been assigned to work in the canning department for several weeks. Defendant, Gary McDermott, a long-time Monsanto employee, was industrial foreman of that department. On the date of the incident in question, plaintiff and three other employees were assigned at the beginning of the work day to transfer a certain chemical from a large container into smaller containers. When they arrived at their work station and noticed that the container was marked "hazardous-corrosive," they requested rubber gloves and goggles before starting their assigned task. A supervisor sent for the safety equipment. Shop rules required that employees busy themselves while waiting for equipment. One of the employees went to another area to do some work. Plaintiff started doing some clean-up or pick-up work around the area. The other two employees were apparently sitting around waiting for the equipment. Someone reported to McDermott that the group was idle, causing McDermott to become angry. He went to the work station and launched a profane tirade at the three workers present, including plaintiff, referring to them as "mother fuckers," accusing them of sitting on their "fucking asses," and threatening to "show them to the gate." The tirade lasted for about a minute, and then McDermott left the area.
Plaintiff was upset and began to experience pain in her chest, pounding in her head, and had difficulty breathing. She went to McDermott's office to discuss the incident. He said he apologized to her; she said he did not. She went to the company nurse, who suggested that plaintiff see a doctor. Plaintiff's family physician met her at the hospital, at which time plaintiff had chest pains, shortness of breath, and cold clammy hands. Fearing that she was having a heart attack, the doctor admitted her to the hospital. Plaintiff spent two days in the coronary care unit and another day in a regular room, during which time she had intravenous fluids, had blood drawn, and had an EKG and other tests done. A heart attack was ruled out and the doctor's diagnosis was acute anxiety reaction, a panic attack. Plaintiff was released from the hospital after three days without restriction, but with medication to take if she had further trouble.
Ms. White returned to work within a week. She was paid her regular pay while off from work, and her medical bills, totaling about $3,200, were paid by the company's medical benefits program. Plaintiff has continued to work at Monsanto, later transferring to McDermott's department at her own request. She occasionally becomes upset thinking about or dreaming about the incident, and has occasionally taken the prescribed medicine, but is not one to take medication.

II.
Ms. White sued Monsanto and McDermott, alleging that McDermott's conduct amounted to the intentional infliction of mental anguish and emotional distress upon plaintiff for which she was entitled to recover damages. After trial, the jury awarded her $60,000. Defendants appealed to the court of appeal, which affirmed, with one judge dissenting in part as to the amount of damages. White v. Monsanto Company, 570 So.2d 221 (La.App. 5th Cir. 1990). Defendants' writ application was *1208 granted by this court. 575 So.2d 381 (La. 1991).

III.
LSA-R.S. 23:1032 makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act. The words "intentional act" mean the same as "intentional tort." The legislative aim was to make use of the well-established division between intentional torts and negligence in common law. The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional. Bazley v. Tortorich, 397 So.2d 475 (La.1981).
The exclusive remedy rule is inapplicable to intentional torts or offenses. The meaning of intent in this context is that the defendant either desires to bring about the physical results of his act, or believes they were substantially certain to follow from what he did. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Bazley, supra.
When an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder. Caudle v. Betts, 512 So.2d 389 (La.1987).

IV.
The particular intentional tort alleged in this case is the intentional infliction of emotional distress. Thus, the legal precepts of general tort law related to this tort must be applied to determine whether plaintiff has proved her cause of action and damages recoverable thereunder.
Most states now recognize intentional infliction of emotional distress as an independent tort, not "parasitic" to a physical injury or a traditional tort such as assault, battery, false imprisonment or the like. See Annotation, Modern Status of Intentional Infliction of Mental Distress As Independent Tort; "Outrage", 38 A.L.R. 4th 998 (1985), and cases cited therein. Discussed in the late 1930's by commentators[1] who synthesized earlier cases,[2] the tort was included in the 1948 supplement to the American Law Institute's Restatement (Second) of Torts § 46.[3] The elements of the tort as described in the text and comments of the Restatement have been widely accepted and quoted.
Several Louisiana court of appeal decisions have recognized and defined the tort, generally in accordance with the Restatement. See Steadman v. South Cent. Bell Telephone Co., 362 So.2d 1144 (La. *1209 App. 2d Cir.1978); Maggio v. St. Francis Medical Center, Inc., 391 So.2d 948 (La. App. 2d Cir.1980), writ denied 396 So.2d 1351 (La.1981); Ferlito v. Cecola, 419 So.2d 102 (La.App. 2d Cir.1982), writ denied 422 So.2d 157 (La.1982); Breaux v. South Louisiana Elec. Co-Op. Ass'n., 471 So.2d 967 (La.App. 1st Cir.1985); Smith v. Mahfouz, 489 So.2d 409 (La.App. 3d Cir.1986), writ denied 494 So.2d 1181 (La.1986); Muslow v. A.G. Edwards & Sons, Inc., 509 So.2d 1012 (La.App. 2d Cir.1987), writ denied 512 So.2d 1183 (1987); Engrum v. Boise Southern Co., 527 So.2d 362 (La. App. 3d Cir.1988); Boudoin v. Bradley, 549 So.2d 1265 (La.App. 3d Cir.1989). See also this court's decision in Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990), which distinguished between the general rule of recovery for the intentional infliction of mental distress and the general rule of no recovery for emotional disturbance unaccompanied by physical injury, caused by mere negligence unless arising under special circumstances.
As noted in Steadman, supra, the Restatement is not binding on a Louisiana court, but it may be considered in determining whether liability exists under the fault-reparation principles of LSA-C.C. Art. 2315. Generally speaking, labels of specific torts and strictures attached thereto do not always coincide with Louisiana's broad and more flexible notion of fault under the Civil Code article. See Jones v. Soileau, 448 So.2d 1268, 1271 (La.1984); Joyner v. Weaver, 337 So.2d 635 (La.App. 3d Cir. 1976); Whittington v. Gibson Discount Center, 296 So.2d 375 (La.App. 2d Cir. 1974); Jones v. Simonson, 292 So.2d 251 (La.App. 4th Cir.1974). Nevertheless, restrictions and guidelines established for policy reasons can give practical guidance in deciding cases, particularly those involving relatively new and developing causes of action such as those for emotional distress injuries unaccompanied by physical injury. See Lejeune v. Rayne Branch Hosp., 556 So.2d 559, 569 (La.1990). Compare Clomon v. Monroe City School Board, 572 So.2d 571, 574, 576 (La.1990).
Drawing on the background described, including consideration of Article 2315 and duty-risk principles, we affirm the viability in Louisiana of a cause of action for intentional infliction of emotional distress, generally in accord with the legal precepts set forth in the Restatement text and comments.
One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.[4]
Thus, in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.
The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." Restatement, supra, comment d, § 46; Prosser and Keaton, The Law of Torts, § 12, p. 59 (5th ed. 1984).
The extreme and outrageous character of the conduct may arise from an *1210 abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Restatement, supra, comment e, § 46. Thus, many of the cases have involved circumstances arising in the workplace. See Annotation, Liability of Employer, Supervisor, or Manager for Intentionally or Recklessly Causing Employee Emotional Distress, 52 A.L.R. 4th 853 (1987); Atchison, Topeka and Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 569, 107 S.Ct. 1410, 1417, 94 L.Ed.2d 563 (1987); Merrick v. Northern Natural Gas Co., 911 F.2d 426 (10th Cir.1990); Sterling v. Upjohn Healthcare Services, 299 Ark. 278, 772 S.W.2d 329 (1989); Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 340 S.E.2d 116 (1986); Byrnes v. Orkin Extermination Co., Inc., 562 F.Supp. 892 (1983); Continental Cas. Co. v. Mirabile, 52 Md. App. 387, 449 A.2d 1176 (1982); Hall v. May Department Stores Co., 292 Or. 131, 637 P.2d 126 (1981); Contreras v. Crown Zellerbach Corp., 88 Wash.2d 735, 565 P.2d 1173 (1977); Alcorn v. Anbro Engineering, Inc., 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970). A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger. Hall, Contreras, and Alcorn, supra.
On the other hand, conduct which may otherwise be extreme and outrageous, may be privileged under the circumstances. Liability does not attach where the actor has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress. Restatement, supra, comment g, § 46. Thus, disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time. See, for example, Maggio v. St. Francis Medical Center, Inc., supra.
The distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme. Restatement, supra, comment j, § 46. See Lejeune v. Rayne Branch Hosp., supra, at p. 570.
The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered. But the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. Restatement, supra, comment f, § 46. It follows that unless the actor has knowledge of the other's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.
Liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct. Restatement, supra, comment i, § 46. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.

V.
Applying these precepts of law to the facts of the instant case, we find that plaintiff has failed to establish her right to recover from the defendants for an intentional tort.
The one-minute outburst of profanity directed at three employees by a supervisor in the course of dressing them down for not working as he thought they should does not amount to such extreme and outrageous conduct as to give rise to recovery for intentional infliction of emotional distress. The vile language used was not so extreme or outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized *1211 community. Such conduct, although crude, rough and uncalled for, was not tortious, that is, did not give rise to a cause of action for damages under general tort law or LSA-C.C. Art. 2315. The brief, isolated instance of improper behavior by the supervisor who lost his temper was the kind of unpleasant experience persons must expect to endure from time to time. The conduct was not more than a person of ordinary sensibilities can be expected to endure. The tirade was directed to all three employees and not just to plaintiff specifically. Although the evidence certainly supports a finding that plaintiff was a decent person and a diligent employee who would not condone the use of vulgar language and who would be upset at being unjustifiably called down at her place of work, there was no evidence that she was particularly susceptible to emotional distress, or that McDermott had knowledge of any such susceptibility. It was obviously his intention to cause some degree of distress on the part of the employees, but there is no indication that his spontaneous, brief, intemperate outburst was intended to cause emotional distress of a severe nature.
The duty here was to not engage in extreme or outrageous conduct intended or calculated to cause severe emotional distress. The duty was not breached because the conduct was not extreme or outrageous to a degree calculated to cause severe emotional distress to a person of ordinary sensibilities and the supervisor did not intend to inflict emotional distress of a severe nature, nor did he believe such a result was substantially certain to follow from his conduct.

VI.
For the reasons expressed in this opinion, the judgments of the district court and court of appeal are reversed, and judgment is rendered in favor of defendants dismissing plaintiff's suit, at plaintiff's cost.
REVERSED AND RENDERED.
WATSON, J., respectfully dissents.
LEMMON, Justice, concurring in Denial of Rehearing.
The application for rehearing presents a compelling argument that a reviewing court should accord great deference to the factual finding of the properly instructed jury that the supervisor's conduct was outrageous. Nevertheless, in this claim against her employer and co-employee, plaintiff's exclusive remedy is for worker's compensation benefits because the evidence does not establish that the supervisor desired to bring about the consequences which resulted from his act or believed the result was substantially certain to follow from his act.
NOTES
[1] See Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033 (1936); Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich. L.Rev. 874 (1939).
[2] Often mentioned was the Louisiana pot-of-gold case, Nickerson v. Hodges, 146 La. 735, 84 So. 37 (1920), in which nominal damages were awarded to a middle-aged mentally deficient woman who suffered severe mental distress as the result of a cruel practical joke.
[3] Restatement (Second) of Torts, § 46(1) provides:

"Outrageous Conduct Causing Severe Emotional Distress
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
[4] Since the viability of plaintiff's claim in this case depends on the existence of an intentional act as distinguished from a reckless act, we do not deal with the Restatement's reference to "recklessly" causing severe emotional distress.