**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-31226
_____

CATHRYN GREEN,

Plaintiff-Appellant,

VERSUS

THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, incorrectly
referred to in plaintiff's complaints as "The Administrators
of the Tulane Educatioinal Fund, Tulane University Hospital &
Clinic, and Tulane University School of Medicine"; TULANE
UNIVERSITY HOSPITAL AND CLINIC; TULANE UNIVERSITY SCHOOL OF
MEDICINE; DONALD R. RICHARDSON, M.D.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
97-CV-1869-K
_____
December 22, 2000

Before DAVIS and EMILIO M. GARZA, Circuit Judges and POGUE[*], Judge.

DAVIS, Circuit Judge:[**]

I.

Cathryn Green filed an action against Dr. Donald Richardson
and his employer, Tulane University, alleging she was sexually
harassed and retaliated against by Dr. Richardson in violation of

_____

[*]Judge, U.S. Court of International Trade, sitting by
designation.

[**]Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Title VII of the Civil Rights Act of 1991.  She also asserted a state law claim of intentional infliction of emotional distress against both Dr. Richardson and Tulane, and a claim of tortious interference with contract against Dr. Richardson.  Both Dr. Richardson and Tulane filed motions for summary judgment.  The district court entered various orders of dismissal, the only one at issue here being a grant of defendants' motion for summary judgment on the intentional infliction of emotional distress claim.  The district court granted a Rule 54(b) motion, allowing an appeal to be taken from this order.  Green's Title VII case against Tulane went to trial, resulting in a verdict for the plaintiff in the amount of $429,013.[1]  The only issue before us is the propriety of the district court's order granting summary judgment in favor of Dr. Richardson on plaintiff's claim of intentional infliction of emotional distress.

## II.

After careful review of the record and briefs of the parties, we are satisfied that Green failed to produce sufficient summary judgment evidence to permit a jury to find that Dr. Richardson's alleged conduct was sufficiently egregious to allow Green to establish her claim for intentional infliction of emotional distress.  In White v. Monsanto Co. the Louisiana Supreme Court held that to make out such a claim, a plaintiff must prove: "1) that the conduct of the defendant was extreme and outrageous; 2)

---

[1]This judgment is currently the subject of a separate appeal in this Court.

2

that the emotional distress suffered by the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe distress would be certain or substantially certain to result from his or her conduct." 585 So. 2d 1205, 1209 (La. 1991).

In defining exactly what will be considered "extreme and outrageous" conduct, the Louisiana Supreme Court has stated that:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be left through which irascible tempers may blow off relatively harmless steam. Id.

This Court has acknowledged that "the level of atrociousness to which the behavior at issue must rise is quite high." Skidmore v. Precision Printing & Packaging, Inc., 188 F. 3d 606, 613 (5th Cir. 1999). The tort is even more carefully scrutinized in the workplace, since employers must, on occasion, "review, criticize, demote, transfer, and discipline employees" in order to properly manage their businesses. Therefore, it is extremely rare that an employment dispute will support an emotional distress claim. Wilson v. Monarch Paper Co., 939 F. 2d 1138, 1143 (5th Cir. 1991). See also Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1026-27

3

(La. 2000).  Even creating "unpleasant and onerous working conditions designed to force an employee to quit, *i.e.*, 'constructively' to discharge the employee...although this sort of conduct often rises to the level of illegality, except in the most unusual cases...is not the sort of conduct...that constitutes extreme and outrageous conduct."  <u>Wilson</u> at 1143.

III.

The district court's careful order and reasons of April 8, 1999 accurately describe the summary judgment evidence.  Viewing that evidence in the light most favorable to plaintiff, we are satisfied that the facts fall short of those necessary to make out an intentional infliction of emotional distress claim under the tough Louisiana standards.  For the reasons stated above and in the district court's order and reasons, we AFFIRM the judgment of the district court.

**POGUE, JUDGE, dissenting:**

Based on a careful review of the record, I am convinced that there are genuine issues of material fact in dispute and, therefore, Green's cause of action should have survived summary judgment.

As the majority explains, to prove the tort of intentional infliction of emotional distress, the plaintiff must show that (1) the defendant's conduct was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe distress would be certain or substantially certain to result from his or her conduct. *See White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). Moreover, in the work place environment, the outrageous conduct requirement precludes recognition of a cause of action based, for example, on a normal workplace vendetta. *See Nicholas v. Allstate Insurance Comp.*, 765 So.2d 1017, 1025 n. 11 (La. 2000). "[U]npleasant and onerous work conditions designed to force an employee to quit, i.e., [to] 'constructively' . . . discharge the employee" do not usually constitute outrageous conduct, except in the "most unusual cases." *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991)(emphasis omitted).

I depart from the majority's analysis, however, because Louisiana law also requires that, in an intentional infliction of emotional distress case, an actor's knowledge of the victim's

5

situation is to be considered in judging the actor's conduct. *See Wright v. Otis Engineering Corp.*, 643 So.2d 484, 487 (La.App. 3rd Cir. 1994); *White*, 585 So.2d at 1210. "Where the actor has knowledge of another's particular susceptibility to emotional distress, the actor's conduct should not be judged in the light of the effect such conduct would have on a person of ordinary sensibilities." *Wright*, 643 So.2d at 487 (emphasis omitted).

After reviewing the record and briefs of the parties, I believe that a reasonable jury could conclude that Richardson intentionally tried to remove Green from her position as a result of her decision to terminate their affair, and that considered in light of the special nature of Green and Richardson's relationship, a relationship that influences the characterization of Richardson's behavior, a reasonable jury could determine that Richardson's actions were, in fact, "outrageous" and "beyond all possible bounds of decency . . . ." *White*, 585 So.2d at 1209. As a result, and in opposition to the majority, I believe that a reasonable jury could find this conduct to be outrageous, satisfying the first prong of the test.

I am also satisfied that a reasonable jury could conclude that Green's distress was severe and that Richardson was substantially certain that severe distress would result from his conduct, elements of the tort the majority did not analyze due to their holding that Richardson's conduct was not outrageous.

The record provides evidence of these facts: Richardson was

Green's boss and friend for more than twenty years. During the course of Green's employment, Richardson pursued Green, making repeated requests to enter into an intimate relationship. In 1993, after Richardson confirmed that a relationship would not affect Green's job, Green finally relented and entered into a consensual relationship with her boss and close friend.

Green led a difficult life. She had experienced periods of depression and attempted suicide, was attacked and raped in her home, and suffered from meningitis, all during the twenty-year period that she knew and was close to Richardson. A reasonable jury could conclude that Richardson, fully aware of Green's background, took advantage of their closeness to pursue a more intimate relationship. A jury could find that when Green ended the affair, Richardson, knowing how important Green considered her job, purposely tried to take away Green's one stabilizing influence, thereby intentionally inflicting distress. In so doing, Richardson abused his authority as Green's boss and close friend. Sexual harassment of this nature falls within the "most unusual cases" contemplated by *Wilson*.

As noted, a reasonable jury could have found that Richardson was not only Green's employer, but her friend, social companion, and for the period of time leading up to the events in question, her boyfriend. Richardson had, on occasion, prescribed antidepressants to Green. He consoled her when she was raped, visiting Green in the emergency room. It is difficult to imagine that Richardson could not know of Green's sensitivities. As such,

7

under Louisiana law, Richardson's conduct should not be viewed in the light of its effect on a person of ordinary sensibilities, but the effect such actions would have on a person who had suffered through difficult emotional experiences. A jury could find that instead of discussing with Green that, upon the termination of their personal relationship, Richardson found it difficult to continue a working relationship, Richardson attempted to sabotage Green's job. Viewed in this manner, Richardson's conduct can be characterized as "outrageous."

A jury could have concluded that Green experienced severe distress as the result of Richardson's conduct. She received numerous days of administrative leave, underwent therapy with a psychiatrist, and was unable to continue her employment with Richardson. Frank Currie, from Tulane's Personnel Office, stated that on several occasions, Green appeared distraught. One psychiatrist found the stress so evident that he recommended to Green not to return to Tulane if she was still under Richardson's supervision.

The evidence is also sufficient for a jury to find that Richardson knew or should have known that his conduct would inflict severe emotional distress on Green. Before entering into the relationship, Green and Richardson had numerous discussions on the effect this personal relationship would have on their working relationship. Green refused to begin a personal relationship with Richardson until he realized how important her job was and reassured her that terminating the relationship would not

8

jeopardize her job.  Between these conversations and their twenty-year friendship, a jury could find that Richardson was aware of the important role Green's job played in her emotional stability.  He would also be aware that any interference with her employment, especially in a harassing manner, would obviously greatly distress Green.

Thus, I conclude that when the evidence is viewed in the light most favorable to the nonmovant, Green, material issues of fact exist precluding summary judgment.

For the foregoing reasons, I respectfully dissent.