NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 06-1306


MARTHA RICHARD

VERSUS

MICHAEL FRUGE, ET AL.


**********


APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 64605-A
HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE


**********


BILLY HOWARD EZELL
JUDGE


**********


Court composed of Oswald A. Decuir, Glenn B. Gremillion, and Billy Howard Ezell, Judges.


REVERSED AND RENDERED.

John Fayne Wilkes, III
Borne, Wilkes, L.L.P.
P. O. Box 4305
Lafayette, LA 70502-4305
(337) 232-1604
Counsel for Defendants/Appellants:
Town of Mamou
Michael Fruge

**Harold Dewey Register, Jr.**
**Attorney at Law**
**P. O. Box 80214**
**Lafayette, LA 70598-0214**
**(337) 981-6644**
**Counsel for Plaintiff/Appellee:**
**Martha Richard**

**EZELL, JUDGE.**

In this matter, Michael Fruge and the Town of Mamou appeal the decision of the trial court awarding Martha Richard $35,000 in general damages for intentional infliction of emotional distress. For the following reasons, we reverse the decision of the trial court.

The facts of the case are not in dispute. Both Mr. Fruge and Mrs. Richard are employees of the Town of Mamou, as they were on the date of the incident precipitating this litigation. Mr. Fruge is an officer in the Mamou Police Department, and Mrs. Richard was the Court Clerk for Mamou. On January 8, 2002, Mr. Fruge entered the police department's dispatch office while off duty to check his schedule. Mrs. Richard was in the dispatch office eating lunch with her sister-in-law, Katrina Richard, and Stephanie Ortego, who were both police dispatchers.

After viewing the schedule, Mr. Fruge asked Mrs. Richard her opinion about the schedule. She refused to answer and replied that she felt Mr. Fruge was "a rat."[1] Mrs. Richard left the dispatch office without incident, returning to her own office. No other words were spoken between the parties. After Mrs. Richard left, Mr. Fruge asked Katrina Richard what was wrong with her sister-in-law. Katrina Richard then also left the office. Mr. Fruge then stated to himself either, "people get mad and they go postal on each other," or, "she does not want me to go postal on her." The only person to hear the comment was Ms. Ortego, to whom Mr. Fruge's back was turned. Ms. Ortego stated that she could not see Mr. Fruge's face and that he did not yell. In a later conversation with Mrs. Richard, Ms. Ortego told her that she should watch her back, as Mr. Fruge had said he was going to go "postal" on her.

_____

[1] It should be noted that one of Mrs. Richard's two brothers on the Mamou police force had been fired for sleeping on the job, although she denied that this was the basis for her comment.

Following the phone call, Mrs. Richard complained to the Assistant Chief of Police. Chief Adam Fruge (no relation to the Plaintiff) felt that Mr. Fruge should be suspended pending a psychological evaluation; however, he was pressured to fire Mr. Fruge by members of the Mamou City Council. Chief Fruge recommended to Mr. Fruge that he resign rather than be fired. Mr. Fruge submitted his voluntary resignation on January 18, 2002. In September 2002 Mr. Fruge was re-hired after submitting to a psychological evaluation wherein he was found "fit for duty."

Mrs. Richard and Mr. Fruge had never had any problems prior to this statement and had, in fact, been friends. However, due to the comments Mr. Fruge made out of her presence, Mrs. Richard alleges she became fearful for her life. She was diagnosed as suffering from reactional anxiety. She took a three-month paid leave of absence. When she returned to work, the Town accommodated her fears by installing a camera in her office and placing a buzz-in lock on her office door. Mrs. Richard filed this claim after Mr. Fruge was rehired, alleging that he intentionally inflicted emotional distress upon her, and that the Town was liable both as his employer and for his re-hiring, which she alleges exacerbated her symptoms.

After a trial on the merits, the trial court ruled in favor of Mrs. Richard, awarding her $35,000 in general damages. From this decision, Mr. Fruge and Mamou appeal, asserting five assignments of error. Because we find merit with their second assignment of error, that the words spoken by Mr. Fruge in the context of this case did not amount to an intentional infliction of emotional distress, we need not address the others.

Louisiana Revised Statutes 23:1032 makes workers' compensation an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act. Mrs. Richard here seeks to recover from

2

her employer, the Town of Mamou for intentional infliction of emotional distress. As noted in *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991):

> [I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.
>
> > The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." [American Law Institute's Restatement (Second) of Torts] comment d, § 46; Prosser and Keaton, *The Law of Torts*,§ 12, p. 59 (5th ed. 1984).

"Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *White*, 585 So.2d at 1210. The key is that "[t]he distress suffered must be such that no reasonable person could be expected to endure it." *Id.*

> The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered. But the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. Restatement, *supra*, comment f, § 46. It follows that unless the actor has knowledge of the other's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.
>
> Liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct. Restatement, *supra*, comment i, § 46. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.

*Id*.

Applying these precepts of law to the facts of the instant case, we find that while her suffering may have indeed been severe, Mrs. Richard has failed to establish her right to recover from the Defendants for an intentional tort. Mr. Fruge's comments do not amount to such extreme and outrageous conduct as to give rise to recovery for intentional infliction of emotional distress. The colloquial language used was not so extreme or outrageous as to go beyond all possible bounds of decency or to be regarded as utterly intolerable in a civilized community. The brief, one-time statement was not even heard by Mrs. Richard. While Mrs. Richard may have been of heightened sensitivity to such comments due to the untimely and violent deaths of some of her friends and family, she testified that Mr. Fruge had no knowledge whatsoever of her particular susceptibility to emotional distress. The conduct simply was not more than a person of ordinary sensibilities can be expected to endure.

Furthermore, the record is completely devoid of any evidence whatsoever that Mr. Fruge either actively desired or was substantially certain that his conduct would cause Mrs. Richard severe emotional distress. Accordingly, the trial court erred in awarding her damages for intentional infliction of emotional distress.

For the reasons expressed in this opinion, the judgment of the trial court is reversed and judgment is rendered in favor of Defendants dismissing Plaintiff's suit, at her cost. Costs of this appeal are also assessed against Mrs. Richard.

**REVERSED AND RENDERED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rules 2-16.2 and 1-16.3, Uniform Rules, Court of Appeal.

4