# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-832

**JACINTIEA DEVILLE**

**VERSUS**

**DONALD ROBINSON, SR., ST. LANDRY COMMUNITY ACTION, DONALD ROBINSON, SR., IN HIS PERSONAL CAPACITY**

**\*\*\*\*\*\*\*\*\*\***
## APPEAL FROM THE
## TWENTY-SEVENTH JUDICIAL DISTRICT COURT
## PARISH OF ST. LANDRY, DOCKET NO. 09-C-0773
## HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, J. David Painter and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Harold D. Register, Jr.
216 Rue Louis XIV
P.O. Box 80214
Lafayette, LA  70598-0214
(337) 981-6644
**ATTORNEY FOR PLAINTIFF/APPELLANT**
   Jacintiea Deville

Earl B. Taylor, St. Landry Parish D.A.
David Lance Pitre
250 W. Vine Street
P.O. Box 921
Eunice, LA  70535
(337) 457-8044
**ATTORNEY FOR DEFENDANT/APPELLEE**
   St. Landry Parish Community Agency

**COOKS, Judge.**

On February 13, 2009, Plaintiff, Jacintiea Deville, filed a Petition for Damages alleging she suffered cruel and unjust treatment at the hands of Mr. Donald Robinson, Sr., who was the Executive Director of the St. Landry Parish Community Action Agency (hereafter CAA). Plaintiff alleged entitlement to relief for mental anguish and emotional distress suffered.

On November 15, 2010, Plaintiff amended her petition alleging Mr. Robinson committed an intentional tort against her and that, under La.Civ.Code art. 2520, CAA is vicariously liable for any damages Plaintiff suffered at the hands of Mr. Robinson.

Plaintiff was hired by CAA on July 22, 2003. She was appointed to the position of Assistant EAP/Housing Manager on October 30, 2003. On May 24, 2004, Plaintiff was promoted to the position of EAP/Housing Programs Manager. Plaintiff's job duties with CAA included being in charge of certain programs that received grants from the federal government. In accordance with that, Plaintiff was in charge of submitting grant applications. The record established on April 21, 2008, Plaintiff failed to timely apply for a USDA Grant Application as per her job description. It was testified that the missed application cost CAA anywhere from $70,000 to $150,000 in grant money.

On April 28, 2008, the CAA's Advisory Board adopted a motion to create a new position of Housing Services Specialist, reduce the responsibilities and compensation of the current Energy/Housing Programs Manager (Plaintiff's position). The Advisory Board in effect abolished Plaintiff's position, and transferred all duties of the position to other departments. The following day, Mr. Robinson issued a written "Administrative Directives" form to Plaintiff setting forth that her "EAP/Housing Programs Manager's position had been eliminated

2

immediately, and your salary will be reduced, based upon reduced responsibilities."

Pursuant to that, Plaintiff's position was abolished and she was placed as a housing worker at a pay rate of $8.00 per hour with the opportunity to apply for a new position as Housing Services Specialist. Plaintiff continued working for CAA through June 1, 2008. Although she was not terminated, and Plaintiff maintains she did not quit or resign, that was the last date she worked for CAA.

Plaintiff initially filed a Workers' Compensation claim on October 15, 2008, which was subsequently dismissed. She then filed the present matter seeking damages on February 13, 2009. A bench trial was held beginning on April 9, 2013.

Plaintiff presented her case over a three-day period. She testified after informing Mr. Robinson of the missed deadline, his attitude toward her changed and the cruel treatment ensued. She testified Mr. Robinson had an open door policy toward her which changed after the missed grant deadline and he became unapproachable. This, Plaintiff alleged, resulted in her inability to do her work and led to several anxiety attacks. She also maintained she was assigned to another program as punishment for the missed grant application.

Plaintiff further testified she understood there would be repercussions due to the missed grant application. She testified the repercussions she suffered were as follows: (1) She was demoted without being given notice, but was instructed to train Shelly Arnaud in some of the duties she was performing; (2) She was to report to Ms. Margaret James and turn in a time sheet to Ms. James; (3) She was no longer invited to the managers' meetings; (4) On May 1, 2008, files were removed from her office and a note was posted on her office door that the door was to remain open at all times; (5) On June 1, 2008, her computer was disconnected; and (6) The last paycheck she received was for pay at an hourly rate of $8.00 rather

than her previous hourly rate of $12.00. In some of her testimony (and in her brief to this Court), Plaintiff attributes these actions solely to Mr. Robinson. However, Plaintiff acknowledged on cross-examination that she could not say who placed the note on her door and disconnected her computer, but presumed it was Mr. Robinson.

As to Plaintiff's allegations that she was not given notice of her job demotion, the evidence established Plaintiff received notice of her job position being abolished on April 29, 2008, the day after a meeting of CAA's Advisory Board, when Mr. Robinson issued to her an Administrative Directives form setting forth the Advisory board's action. Likewise, it was stated that Plaintiff's hourly rate was reduced because her position was abolished and she was transferred to another position.

Concerning the files being removed from Plaintiff's office, there was testimony that there was an audit of these files that led to the discovery that many of the files were incomplete and others had original documents in them, such as social security cards, and should not have been retained.

Ms. James testified she was solely responsible for posting the note requesting Plaintiff keep her office door open. Ms. James stated she did this because Plaintiff was now under her supervision and she wanted the door to remain open. All other employees under her supervision were in an open area and Ms. James stated she wanted Plaintiff to be in a similar situation as other co-employees.

As to the computer being disconnected, it was testified this was done on June 1, 2008. This was the last date Plaintiff worked in that position. As she testified, she left on that date and did not return. Testimony was given that the computer was removed and two new computers were placed in that department and in that office shortly thereafter.

4

Following the presentation of Plaintiff's case, Defendants moved for a Motion for Involuntary Dismissal pursuant to La.Code Civ.P. art. 1672(B). Defendants contended that upon the facts and law presented, Plaintiff had shown no right to relief. After a recess, the trial court granted the Involuntary Dismissal, setting forth oral reasons for judgment and concluding "the evidence presented does not afford the plaintiff, under the law, a right to the relief she seeks." Plaintiff has appealed the judgment, contending "the trial court erred in granting the defendant's motion for involuntary dismissal."

## ANALYSIS

Louisiana Code of Civil Procedure article 1672(B) provides for a motion for involuntary dismissal. That article states:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

A trial court is afforded much discretion in deciding a motion for involuntary dismissal. *Koonce v. Dousay*, 06-1498 (La.App. 3 Cir. 3/7/07), 952 So.2d 893. This vast discretion in granting a motion for involuntary dismissal is reviewed under the manifest error standard. *Guidry v. City of Rayne Police Dep't*, 09-664 (La.App. 3 Cir. 12/9/09), 26 So.3d 900.

In order to recover for intentional infliction of emotional distress, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). The court reviewed the

5

elements of intentional infliction of emotional distress, explaining: "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 1209. Conduct that is simply tortious or illegal does not rise to the level of extreme and outrageous. *Nicholas v. Allstate Ins. Co.*, 99-2522 (La.8/31/00), 765 So.2d 1017. Accordingly, a defendant cannot be held liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *White*, 585 So.2d at 1209. Rather, "[t]he distress suffered must be such that no reasonable person could be expected to endure it." *Id.* at 1210.

Louisiana's jurisprudence has limited the cause of action for intentional infliction of emotional distress in a workplace setting to cases which involve a pattern of deliberate, repeated harassment over a period of time. *Nicholas*, 765 So.2d 1017. Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry. *Id.*

As to whether the conduct of Mr. Robinson was "extreme and outrageous," the trial court specifically found: "the evidence establishes that any actions taken by Mr. Robinson did not rise to the level of being extreme and outrageous. Furthermore, this Court is not of the opinion that the distress suffered by [Plaintiff] is such that no reasonable person could be expected to endure it." The trial court noted there was testimony by the Plaintiff herself that she "had other anxiety attacks through the years. I think the testimony was even at the level of two or three a month due to the pressure of her job, and this was from 2004 on and not necessarily subsequent to April 22, 2008."

In brief, Plaintiff contends Mr. Robinson himself was responsible for reducing her pay, abolishing her position without prior notice, submitting negative employee performance evaluations, disconnecting her office computer and

6

removing files from her office. The trial court addressed these allegations and noted many of the repercussions Plaintiff claimed to endure were not attributable to the actions of Mr. Robinson. Ms. James testified she was responsible for the posting of the note of Plaintiff's office door. The abolishment of Plaintiff's job was made by CAA's Advisory Board, notice of which Plaintiff did receive, and which resulted in Plaintiff's pay cut. Moreover, the trial court noted in its oral reasons for judgment that Plaintiff's job evaluations had been on a steady decline for years. In 2003, Plaintiff received an overall "Good" rating on her "Employee Performance Evaluation." In 2006, Plaintiff was given an overall "Fair" rating on her evaluation, but in both 2007 and 2008 received an "Unsatisfactory" rating. Thus, the decline in her evaluations began occurring years prior to the missed grant deadline.

The trial court also found Mr. Robinson did not have specific intent to cause Plaintiff severe emotional distress or that it was substantially certain to result from his conduct. The trial court determined there was no direct evidence that Mr. Robinson intended to cause Plaintiff emotional distress, stating: "[E]ven if Mr. Robinson intended to place [Plaintiff] under added pressure to perform duties because of the issue with the deadline, that the desire to place one under added pressure for failing to perform as expected in the workplace, is not the same as specifically intending to cause [Plaintiff] severe emotional distress."

After a review of the record, we cannot say the trial court manifestly erred in concluding upon the facts and law presented by Plaintiff, she did not show any right to relief. The law is clear in order to recover on a claim for intentional infliction of emotional distress, the conduct complained of "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

7

community." *White*, at 1209. The trial court found Plaintiff did not meet this burden and we find no error in that finding.

Lastly, we note Plaintiff, in her brief, alleges Mr. Robinson created a "hostile work environment" to ensure she would quit her employment with CAA. This issue was never raised by Plaintiff below. As a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. *Costello v. Hardy*, 03-1146 (La.1/21/04), 864 So.2d 129 (citing *Segura v. Frank*, 93-1271 (La.1/14/94), 630 So.2d 714, *cert. denied*, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994)). Accordingly, we will not consider this issue on appeal.

## DECREE

For the foregoing reasons, the judgment of the trial court granting Defendants' Motion for Involuntary Dismissal. Costs of this appeal are assessed against Plaintiff-Appellant, Jacintiea Deville.

**AFFIRMED.**