Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,333-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BOBBIE J. CLAY                                Plaintiff-Appellee

versus

JAMES EARL SUTTON                         Defendant-Appellant

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019CV00032

Honorable Jefferson B. Joyce, Judge

* * * * *

JAMES EARL SUTTON                         In Proper Person,
                                          Appellant

BOBBIE J. CLAY                            In Proper Person,
                                          Appellee

* * * * *

Before PITMAN, GARRETT, and COX, JJ.

**PITMAN, J**.

Defendant James Earl Sutton appeals the judgment of the trial court rendered in favor of his ex-wife, Plaintiff Bobbie J. Clay, in the amount of $3,500, which was awarded to her after she filed a suit for "extreme mental and emotional abuse." For the following reasons, the judgment of the trial court is reversed.

**FACTS**

Plaintiff filed suit in proper person seeking $10,000 against Defendant and alleged that the suit sought damages for extreme mental and emotional abuse by her former spouse. A trial was held on February 19, 2019, and resumed February 21, 2019. The following evidence was adduced.

Plaintiff and Defendant were married to each other in October 2017 and divorced in November 2018. According to Plaintiff, the marriage was contentious from the very beginning. After the ceremony, Defendant left his new bride, Plaintiff, at the church and drove away with his ex-wife, their children and grandchildren in his truck with "just married" written on it. Plaintiff went home alone. Plaintiff's one stipulation prior to marriage to Defendant was that he not be diabetic, because she wanted an intimate relationship with him, and her former partner had been diabetic and unable to perform. Apparently, Defendant lied to Plaintiff and claimed his health was good, but he had been told he was "pre-diabetic." Plaintiff claimed that the marriage was not consummated and that Defendant refused to take medication prescribed by the doctor. Defendant disputed Plaintiff's version of these and other facts.

According to Plaintiff, in addition to lying about being diabetic, Defendant did many things to irritate Plaintiff, including taking his ex-wife

and their children to church every Sunday—the same church where Plaintiff sang in the choir. This was extremely humiliating to Plaintiff because Defendant sat in church with his ex-wife and children while she was singing, and everyone at their church witnessed this outlandish behavior and wondered about what type of wife she was being to him. Also, over Plaintiff's objections, Defendant allowed his ex-wife to ride in the front seat of the truck to church. Plaintiff asked that the ex-wife be relegated to ride in the back seat, but the ex-wife refused to ride there, and Defendant did not insist that she do so. Defendant claims he discussed this with Plaintiff and that Plaintiff accepted the situation with his ex-wife.

Plaintiff incurred many expenses while married to Defendant. She began insuring him on her automobile policy to save him money. In an attempt to fit in with her new husband's family, she purchased 20 bicycles for his grandchildren. Defendant claimed he told her not to purchase the bikes, as did his daughter and other family members.

Plaintiff soon tired of the relationship, out of which she was getting nothing except aggravation and humiliation, so after 4 1/2 months of marriage, she gathered Defendant's clothes and other belongings and made him leave the matrimonial domicile. The couple divorced a year and a month after they married. Plaintiff was represented, pro bono, by a friend.

After the facts of the unhappiness in the marriage were established and Plaintiff's complaints concerning the debts she incurred as a result of the marriage were heard, the trial court attempted to establish the basis for Plaintiff's cause of action.

2

The trial court asked:

> So, these things like that you—the money you expended out for
> him and everything, why didn't you raise these in the divorce to
> say, "I should be owed these, you know, the 20 bikes, or the—
> this was the insurance and all that." These, you know—when
> you're separating your community property, or you're
> separating up your divorce, you say these are those things.

Plaintiff responded by stating that her attorney advised her that if property had to be settled, the action would cost her more than she could afford, so she decided to just get divorced. She stated she would not have sued Defendant in the action at bar except for the amount of debt she had as a result of her marriage to him.

The trial court, without noting that her cause of action was infliction of emotional abuse, told Plaintiff that the proof of her claim was insufficient concerning the 20 bicycles and the wedding expenses. In response, Plaintiff stated:

> In all fairness, I didn't sue him for the bicycles or whatever
> went on at the wedding or afterwards. I sued him because of
> what I feel in my heart. What he did to me was unnecessary. It
> took away my choice to decide whether or not I wanted to
> marry a man with diabetes. And if he had told me, if I loved
> him enough, I would have married him regardless, but that
> choice was taken away from me because he lied about being a
> diabetic. So that's why I sued him for $10,000.

The trial court asked her, "So you're not asking for anything back on the bikes or the wedding?" Plaintiff responded, "I sued him for that reason."

Neither Plaintiff nor Defendant was represented by counsel. The trial court explained to Plaintiff that she needed to provide proof of the debts for which she was claiming damages and that testimony alone that the debts existed was not enough for it to rule in her favor. It explained to Defendant that if he objected to any of these claims for damages or could show that he had reimbursed her, he, too, would have to provide proof to the court that the

3

money was not owed. It also indicated to Plaintiff that if she was claiming damages for infliction of emotional abuse, she would have to provide proof of the value of her claim, which could be through testimony of counselors or psychologists. It informed Plaintiff and Defendant that it would hold another day open for further evidence to allow them to gather financial information, credit card statements, etc., to prove their respective cases.

A few days later, the parties returned to court, whereupon Plaintiff stated that she was unable to obtain the necessary proof because Wal-Mart could not provide her with the information she needed for another nine days. She gave the court the information she had, which the court did not find helpful. Her credit card receipt reflected purchases from Wal-Mart, but did not indicate the exact items. The trial court allowed her to supplement the record in March 2019 with the proof she later obtained from other sources.

On April 11, 2019, the trial court entered judgment in favor of Plaintiff and against Defendant in the amount of $3,500 plus court costs and judicial interest from the date of demand. No reasons for judgment were rendered orally or in writing, leaving it unclear as to why, or on which basis, it awarded judgment in Plaintiff's favor. Defendant appeals the judgment of the trial court.

## DISCUSSION

Defendant appealed the judgment simply because he did not think it should have been rendered against him.

In *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991), the tort of intentional infliction of emotional distress was adopted as a viable cause of action. The court stated that one, who by extreme and outrageous conduct intentionally causes severe emotional distress to another, is subject to

4

liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Id.* The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Id.*

In *Covington v. Howard*, 49,135 (La. App. 2 Cir. 8/13/14), 146 So. 3d 933, *writ denied*, 14-1927 (La. 11/21/14), 160 So. 3d 973, this court noted that although negligent infliction of emotional distress ("NIED") is not an independent tort like battery, trespass or intentional infliction of emotional distress, it is now well established in Louisiana jurisprudence that a claim for NIED unaccompanied by physical injury is viable under La. C.C. art. 2315, which provides, in pertinent part, that "[e]very act whatever of man that causes damages to another obliges him by whose fault it happened to repair it." *Id.* Courts utilize a duty-risk analysis to assist in determining whether one may recover under La. C.C. art. 2315. *Id.* For liability to attach, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the

5

plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). *Id.* A negative answer to any of those inquiries results in a determination of no liability. *Id.*

In the case at bar, Plaintiff failed to prove the elements necessary to recover for the tort of either intentional or negligent infliction of emotional distress. Plaintiff testified that she was humiliated by Defendant's actions in leaving the church after their wedding with his ex-wife and seriously disturbed by other behavior, including the falsehood that he did not suffer from diabetes; however, she failed to prove that she has sought any treatment for the emotional damages she allegedly suffered. Further, she did not prove that Defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

The evidence Plaintiff presented to the trial court addressed only issues which were more properly settled in the couple's divorce suit. Plaintiff produced no evidence substantiating her cause of action for infliction of emotional distress; thus, the judgment of the trial court must be reversed.

La. C.C.P. art. 2164 concerns the scope of the appeal and the award of damages and the taxation of costs in the lower court and this court and states that this court may make any such decision that it considers equitable. Defendant was allowed to file this appeal *in forma pauperis* and was allowed to proceed without payment. For this reason, it would be inequitable to assess the costs of the appeal against Plaintiff now that the judgment in her favor is being reversed. Therefore, we choose to forgo the assessment of costs against her.

**CONCLUSION**

For the foregoing reasons, the judgment in the amount of $3,500 rendered in favor of Plaintiff Bobbie J. Clay and against Defendant James Earl Sutton is hereby reversed.  Because this appeal was filed *in forma pauperis*, the costs of the appeal will not be assessed to either party.

**REVERSED**.