960 So.2d 166 (2007)
Peggy SHARP, Tommie Jane Dunaway, and Henry Sharp
v.
BELLE MAISON NURSING HOME, INC., North Oaks Medical Center, Gregory Allen, M.D., and Tangipahoa Parish Coroner, Richard Wayne Foster.
No. 2006 CA 1107.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*167 Carol E. Parker, Charles J. Fulda, IV, Ponchatoula, Counsel for Plaintiffs/Appellants Peggy Sharp, Tommie Jane Dunaway, and Henry Sharp.
Carey J. Guglielmo, Valerie A. Judice, Baton Rouge, Counsel for Defendant/Appellee Richard Wayne Foster.
Charles A. Schutte, Jr., Baton Rouge, Counsel for Defendant Belle Maison Nursing Home.
Alton B. Lewis, Hammond, Counsel for Defendant North Oaks Medical Center.
James R. Strain, Jr., Slidell, Counsel for Defendant Gregory Allen, M.D.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
This appeal challenges the action of the trial court in sustaining a peremptory exception raising the objection of no cause of action. We affirm.

BACKGROUND
On July 29, 2004, plaintiffs, Peggy Sharp, Henry Sharp and Tommie Jane Dunaway, the surviving children of Neva Sharp, filed this lawsuit against Belle Maison Nursing Home, Inc. (Belle Maison), North Oaks Medical Center, Dr. Gregory Allen, and the Tangipahoa Parish Coroner, Dr. Richard Wayne Foster. Plaintiffs asserted that on July 28, 2003, their 92-year old mother, a resident of Belle Maison, was negligently dropped to the floor by a Belle Maison nurse's aide, which caused her to suffer an injury to her left leg and other bodily injury.
In their petition, plaintiffs made the following allegations: Mrs. Sharp's daughter, Peggy Sharp, was present when her mother was dropped by the nurse's aide and demanded that nursing home personnel call Dr. Gregory Allen, her mother's primary care physician. Peggy Sharp was informed that her mother would be seeing another doctor later that afternoon for a previously scheduled appointment. During the day, Peggy Sharp repeatedly requested that the staff contact Dr. Allen and arrange for an x-ray of her mother's left leg; however, Mrs. Sharp did not receive medical attention for the leg injury that day.
The following day, Mrs. Sharp was taken to North Oaks Medical Center complaining of chest pains. Peggy Sharp's request that hospital personnel take an x-ray of her mother's left leg was denied. While in the hospital, Mrs. Sharp continued to complain of pain in her left knee. Later that evening, Mrs. Sharp died. Following her mother's death, Peggy Sharp demanded that Dr. Allen obtain an x-ray of her mother's leg, but he refused, stating that Mrs. Sharp died from a heart attack, not a leg injury.
Mrs. Sharp's body was moved to a funeral home, and Peggy Sharp telephoned the Tangipahoa Parish Coroner's Office in an attempt to have someone investigate her mother's knee injury. An investigator from the coroner's office went to the funeral home and confirmed that Mrs. Sharp's knee was in fact bruised and swollen. Peggy Sharp requested that the investigator arrange for an x-ray of her mother's leg or for an autopsy. However, the investigator refused the request on the basis that Dr. Allen had reported that Mrs. Sharp died from a heart attack, not a leg injury.
Plaintiffs averred that the pain suffered by their mother as a result of the fall and *168 lack of medical attention for over twenty-four hours caused or precipitated her heart attack. They levied numerous allegations of negligence as to the nursing home, the hospital, and Dr. Allen, based on their mother's fall and the lack of medical treatment for her knee injury. They alleged that the coroner, Dr. Richard Foster, was negligent in: (1) failing to take an x-ray of Mrs. Sharp's injured knee, despite repeated requests by her daughter; (2) failing to order and/or conduct an autopsy on Mrs. Sharp, despite her daughter's request; (3) failing to hire, train and supervise assistants to respect the reasonable wishes of the grieving relatives of the deceased; and (4) failing to preserve evidence, including but not limited to x-rays of the injuries, evidence of the fall, the extent of the injuries sustained, the effect of the injuries on Mrs. Sharp's well-being, the effect of the fall precipitating the heart attack, and the cause of the heart attack.
The coroner filed a peremptory exception raising the objection of no cause of action, maintaining that he was under no duty to assist the family by preserving evidence of alleged negligence of other health care providers, including taking a postmortem x-ray. Furthermore, he asserted, the allegations of the petition demonstrated that an investigator with the coroner's office did view the body, noted the condition of the left knee and determined the cause of death was a heart attack. The coroner also claimed that he did not owe a duty to perform an autopsy on Mrs. Sharp, as the evidence showed that she died from a heart attack, and there was no allegation that the violation of a criminal statute contributed to her death.
Following a hearing, the trial court sustained the exception of no cause of action. This appeal, taken by plaintiffs, followed.[1]

DISCUSSION
The peremptory exception raising the objection of no cause of action is a procedural device used to determine the sufficiency in law of the petition. LeJeune v. Causey, 93-0455 (La.App. 1 Cir. 3/11/94), 634 So.2d 34, 36. The exception tests whether, under the allegations of the petition, the law affords the plaintiff any remedy for the grievance asserted and is triable on the face of the pleadings. In ruling on the exception of no cause of action, a court must accept all allegations of the petition as true, and no evidence may be introduced to support or controvert the objection. Id.
Louisiana Revised Statutes 33:1551 et seq. set forth the duties and responsibilities of a coroner. In certain cases, a coroner has a duty to either view the body or make an investigation into the cause and manner of death, such as where the death is suspicious, unexpected, or unusual. La. R.S. 33:1563(A)(1). However, when there is a reasonable probability that the violation of a criminal statute contributed to the death, the coroner is required to perform an autopsy. La. R.S. 33:1563(B)(1); LeJeune, 634 So.2d at 36-37.
Plaintiffs insist that the coroner was legally obligated to perform an autopsy under La. R.S. 33:1563(B)(1) because there was a reasonable probability that the violation *169 of a criminal statute by the nursing home staff contributed to Mrs. Sharp's death. Although they did not point to any criminal violations in their petition, plaintiffs contend that the factual allegations contained therein support a finding that the nursing home staff violated La. R.S. 14:93.3(A), which provides criminal penalties for acts of cruelty to the infirmed. Further, they insist, the staff was guilty, among other things, of criminal negligence under La. R.S. 14:12 and negligent homicide under La. R.S. 14:32(A). Thus, plaintiffs insist, the allegations of the petition state a viable cause of action for damages against the coroner.
The coroner, on the other hand, asserts that he did not owe a duty to plaintiffs to perform an autopsy of Mrs. Sharp or investigate her death. He points to LeJeune, 634 So.2d at 37, wherein another panel of this court stressed that the coroner's primary duty under the legislative scheme is to determine the possibility of violations of criminal law or the existence of public health hazards in certain cases of death. In LeJeune, this court stated that the duty statutorily imposed on the coroner is for the benefit of the sovereign, and not the private individual or the individual's private interest. Id.
Moreover, the coroner asserts, the allegations of the petition do not support plaintiffs' claim that there existed a reasonable probability that a violation of a criminal code violation contributed to Mrs. Sharp's death, and therefore, he had no statutory duty to perform an autopsy. In support of this claim, the coroner stresses that: (1) plaintiffs alleged only negligent conduct in the petition; (2) Mrs. Sharp died in a hospital while being attended to by medical personnel; (3) Mrs. Sharp's primary care physician opined that she died of a heart attack; and (4) an investigator with the coroner's office conducted an examination and did not determine that a reasonable probability existed that criminal conduct contributed to Mrs. Sharp's death.
We agree with the coroner's position and hold that the allegations of the petition do not give rise to any cause of action against Dr. Foster, in his capacity as the Coroner for the Parish of Tangipahoa, for which the law provides a remedy. Louisiana Revised Statutes 33:1563(B)(1) does not impose a duty on the coroner to conduct an autopsy for the benefit of private individuals, and therefore, the failure to conduct an autopsy does not give rise to a cause of action for damages to private individuals such as plaintiffs. Furthermore, even if the statute could be read to extend a remedy to private persons against a coroner, we find that the facts alleged do not support a conclusion that the coroner had a duty to perform an autopsy under La. R.S. 33:1563(B)(1).
In this case, accepting the facts alleged as true, a 92-year old female died in a hospital after sustaining a heart attack. The coroner's agent investigated her death, noted the condition of her left leg, and was apprised that Mrs. Sharp's physician concluded she died from a heart attack. Plaintiffs failed to allege facts to show that there was a basis for the coroner to believe that there was a reasonable probability that the violation of a criminal statute contributed to Mrs. Sharp's death.[2]
For the foregoing reasons, the judgment of the trial court sustaining the peremptory *170 exception raising the objection of no cause of action is affirmed. All costs of this appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] At the outset, we note that plaintiffs claim La. R.S. 33:1563(A) is unconstitutionally vague. Plaintiffs did not specifically plead the unconstitutionality of this provision, but did raise the issue in a memorandum in opposition to the exception of no cause of action. Even if we were to find the constitutional issue was properly raised, it is clear that the constitutionality of La. R.S. 33:1563(A) has absolutely no relevance to a cause of action asserted against the coroner under an entirely different provision, La. R.S. 33:1563(B)(1), and we decline to address this matter further.
[2] Because plaintiffs cannot cure the defect of failing to state a cause of action against Dr. Foster by simply amending their petition to set forth with specificity those criminal statutes the nursing home staff may have violated, the trial court did not err in not giving plaintiffs an opportunity to amend the petition.