EDWIN A. LOMBARD, Judge.
_JjThe plaintiffs, Patrick Simmons, Sr., and Crystal Simmons, individually and on behalf of their minor children, Marcus, Ania, and their deceased child, Eli, appeal the district court judgment of October 3, 2015, granting the exception of no cause of action and dismissing all causes of action against the office of the Coroner of Orleans Parish and the coroner, Dr. Frank Minyard,[1] in his professional capacity. After de novo review of the record in light of the applicable law and arguments of the parties, we reverse the judgment of the district court.

Relevant Facts and Procedural History

On or about February 11, 2013, the Simmons’ children were removed from the physical care and control of their parents by an agency of the State of Louisiana and placed in foster care. On or about April 8, 2013, the State agency advised Mr. and Mrs. Simmons that Eli had been taken to Children’s Hospital in New Orleans. Upon arrival at the hospital, Mr. and Mrs. Simmons were advised of Eli’s death.
|2In this lawsuit filed on April 8, 2014, the plaintiffs allege that the coroner’s office received Eli’s body on April 10, 2013, to perform an autopsy as to the cause of death but failed to do so or to provide proper information as to the cause of death. In addition, the plaintiffs claim that Eli’s body was misplaced by the coroner’s office because, despite repeated requests and court orders to maintain and preserve the body for a period of nine months, the coroner’s office was apparently unable to locate the body until, approximately nine months after the child’s death and without notification to the family, the coroner’s office cremated the body and buried it in an as yet undisclosed (to the family) “John Doe” burial plot. The plaintiffs assert that these acts and omissions constitute gross and/or intentional negligence by the coroner’s office, as well as intentional infliction of emotional distress on the remaining family members.
The “Defendant Coroner of the Parish of Orleans, in his official capacity” (the coroner’s office) filed a peremptory exception for no cause of action and, alternatively, dilatory exceptions of vagueness and improper cumulation of actions on May 30.2014. In response, the plaintiffs filed an amended and supplemental petition for damages on July 10, 2014, again asserting that the coroner’s office and Dr. Minyard in his professional and personal capacities, negligently and/or intentionally misplaced their son’s body and then, nine months later, negligently and/or intentionally cremated the body without notifying the court or family and that these action were in direct violation of Louisiana law, including but not | o,limited to procedural mandates for coroners set forth in La.Rev.Stat. 13:5701 et seq.
The peremptory exception of no cause of action at issue in this appeal was filed by the coroner’s office on August 7, 2014. The following day, an order to show cause was issued, setting a hearing date of Sep *1150 tember 19, 2014. At the hearing, counsel for the coroner’s office argued that the exception should be maintained because the statutory duties are imposed'on the coroner are “for the welfare of society benefiting the public at large through public health and public justice” and, therefore, the coroner “owes no duties to private individuals who are carrying out statutory duties and the ones alleged here in this petition.” Counsel for the plaintiff pointed out that the actions of the coroner’s office in this case went beyond the discretionary duties prescribed by statute and that the coroner’s office failed to “perform specific mandatory duties such as preserving the body and contacting the custodians of the body (the parents[2]) before cremating the body or disposing of the body.” Specifically, counsel asserted that the coroner’s office “cremated this child and then disposed of the remains in a location the parents still don’t know without seeking the parents’ permission or providing a death certificate to the parents.”
The district court judge granted the exception orally at the hearing and, on October 3, 2014, issued a signed the judgment maintaining the peremptory | ¿exception of no cause of action and dismissing the “the Coroner of the Parish of Orleans, in his official capacity” as a party defendant in this action. In her reasons for judgment, the district court judge observed that the plaintiffs alleged that “the Coroner failed to comply with a variety of statutes governing the coroner’s duties in maintaining and then delivering a body for final disposition” and that, although the plaintiffs’ petitions set forth specific statutes, “[t]here is no cause of action on such an alleged statutory violation.” After reiterating that there “is no private cause of action against the Coroner for how the coroner collects evidence, investigates a death, performs the autopsy or disposes of the decedent’s body,” the district court concluded “[t]he duty imposed upon the coroner is for the benefit of the public, not a private individual.”
The plaintiffs timely appeal this judgment.

Applicable Law

“Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.” Industrial Companies, Inc. v. Durbin, 02-0665, p. 6 (La.1/28/03), 837 So.2d 1207, 1213 (citations omitted). Accordingly, “[ejvery reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial.” Id. (citation omitted).
| ¡/The focus of an exception of no cause of action is “whether the law provides a remedy against the particular defendant in this case” or, in other words, the purpose of a no cause of action is “to test the legal sufficiency of the petition by determining whether the particular plaintiff is afforded a remedy in law based on the facts alleged in the pleading.” Id. (citations omitted). Thus, “[t]he exception is triable on the face of the petition and, for the purpose of determining the issues raised by the exception, the well-pleaded *1151 facts in the petition must be accepted as true.” Id. (citations omitted).
In Louisiana, “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” La. Civ.Code art. 2315. Under Louisiana jurisprudence, a negligence claim generally requires the plaintiff to establish five elements: (1) the duty element: whether the defendant had a duty to conform his conduct to a specific standard; (2) the breach element: whether the defendant’s conduct failed to conform to the appropriate standard; (3) the cause-in-fact element: whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) scope of liability element: whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) the damages element: whether the plaintiff was damaged. Hanks v. Entergy Corp., 06-477 (La.12/18/06), pp. 20-21, 944 So.2d 564, 579.
In addition, “[o]ne who by extreme and outrageous conduct intentionally causes severe emotion distress to another is subject to liability for such emotional distress.... ” White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991). “[T]o | ^recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.” Id. “The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.” Id. at 1209-10 (citation omitted).
The duties of the coroner are defined by statute. See La.Rev.Stat. 13:5701 et seq. The coroner is statutorily required to investigate the cause and manner of death in all cases involving ... “suspicious, unexpected, or unusual deaths,” La.Rev.Stat. 13:5713(A)(1), “[sjudden or-violent deaths.” La.Rev.Stat. 13:5713(A)(2), “[d]eaths due ■ to unknown or obscure causes or in any unusual manner,” La.Rev.Stat. 13:5713(A)(3), “[a]ny death from natural causes occurring in a hospital under twenty-four hours of admission,” La.Rev.Stat. 13:5713(A)(7), and “[d]eaths due to trauma from whatever cause.” La.Rev.Stat. 13:5713(A)(10). As part of his investigation, the coroner has the discretionary authority to perform an autopsy and “may hold any dead body for any length of time that he deems necessary.” La.Rev.Stat. 13:5713(B)(1) & (3). Based on his examination, investigation, or autopsy (mandated by statute under the circumstances of this case), the “coroner shall furnish a death certificate” and “shall state as best he can |7the cause and means of death.” La.Rev. Stat. 13:5713(E)(1) (emphasis added). “The coroner shall furnish a copy of his final report or autopsy report, or both, upon written request, to the last attending physician of the deceased or the designated family physician of the deceased, provided that the family of the deceased has given written authorization to the coroner or the requesting physician of such a report.” La.Rev.Stat. 13:5713(1).
The Louisiana Legislature provided only ' limited immunity from liability to the coroner’s office. Specifically, La.Rev.Stat. 13:5713(L) provides:
(1) Liability shall not be imposed on an elected coroner or his support staff based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the *1152 course and scope of their lawful powers and duties.
(2) The provisions of Paragraph (1) of this Subsection are not applicable to any of the following:
(a) To acts or omission which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(b) To actions or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
(c) The legislature finds and states that the purpose of this Subsection is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created co-dal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.

Standard of Review

In reviewing a trial court’s ruling sustaining an exception of no cause of action, the appellate court “should conduct a de novo review because the exception | ¿raises a question of law and the trial court’s decision is based only on the sufficiency of the petition.” Industrial Companies, Inc., 02-0665 at p. 6-7, 887 So.2d at 1213 (citation omitted).

Discussion

The plaintiffs appeal, arguing that the district court erred in finding that a private cause of action does not exist against the coroner’s office and that the coroner’s office is entitled to absolute immunity.
In response, the coroner’s office insists that a private cause of action cannot be asserted by the plaintiffs based on the coroner’s performance of statutory duties because the statutory duties are imposed for the benefit of the public and not a private individual. Specifically, the coroner’s office alleges “[t]he law is clear that no cause of action exists against a coroner in his official capacity for failure to comply with his or her statutory duties,” citing as supporting authority LeJeune v. Causey, 93-0445 (La.App. 1 Cir. 3/11/94), 634 So.2d 34 (La.App. 1 Cir.1994) and Sharp v. Belle Maison Nursing Home, Inc., 06-1107 (La.App. 1 Cir. 3/23/07), 960 So.2d 166. The coroner’s office insists, however, that this assertion does not mean — and the district court did not find — that the coroner is entitled to absolute immunity. Rather, the coroner’s office contends that “the district court properly limited its decision to the factual allegation of the plaintiffs’ petition and determined there was no viable cause of action.” Finally, the coroner’s office points to a similar case wherein another Orleans Parish district court judge, framing the issue as “what if any duty was owed” by the coroner to a private individual, granted an exception of no cause of action with regard to a negligence claim (based on La. Civ.Code art. 2315), finding that the statutory duties and [^responsibilities of coroners set forth in La.Rev.Stat. 13:5701 et seq. do not afford a private right of action to an individual.
The coroner’s office reliance on LeJeune and Sharp is misplaced. The First Circuit concluded in those cases that there was no cause of cause of action against the coroner’s office because “the duty statutorily imposed upon the coroner is for the benefit of the sovereign, and not the private individual or the individual’s private interest.” 634 So.2d at 37 (citing Gavagan v. Marshall, 160 Fla. 154, 33 So.2d 862, 867 (1948)) and Sharp, 06-1107 at p. 5, 960 So.2d at 169 (citing LeJeune, supra). As such, the First Circuit’s conclusion that no private right of action exists against the *1153 coroner’s office (which effectively imbues the coroner’s office with absolute immunity because it bars any citizen from filing a claim) is based, not on Louisiana precedent or the Louisiana statutory scheme, but on a 1948 decision from the Florida Supreme Court decision. Moreover, the First Circuit’s conclusion is wholly contrary to the explicit statutory language that states the coroner’s immunity is limited to only those activities within the course and scope of his duties that are reasonably related to legitimate government objectives, see La Rev. Stat. 13:5713(L)(3), and should not be construed to “to reestablish any immunity based on the status of sovereignty.” La. Rev.Stat. 13:5713(L)(2)(c). The Louisiana legislature specifically stated that the purpose of subsection (L) of the statute (providing limited liability) was “not to reestablish any immunity based on the status of sovereignty.” Rather, the purpose in providing limited immunity to the coroner’s office was “to clarify the substantive content and parameters of application of such legislatively created codal articles [such as La. Civ.Code 2315] and laws.... ” La.Rev.Stat. 13:5713(L)(3).
| inMoreover, the issue before us is not whether the plaintiffs have a right of action, “private” or otherwise, against the coroner’s office, but whether the plaintiffs sufficiently stated a cause of action in their pleadings. The Louisiana legislature specifically stated that the coroner’s immunity did not extend to acts or omissions that constitute “willful, outrageous, reckless, or flagrant misconduct,” La Rev. Stat. 13:5713(L)(2)(b). The plaintiffs’ allegations, which we must assume to be true, clearly constitute outrageous and flagrant misconduct by the coroner’s office in its failure to investigate, perform an autopsy, and provide information (including a death certificate) as to the 'cause of the child’s death. Likewise, the plaintiffs’ allegations that the coroner’s office lost the body and then cremated and buried the body without notifying the family support claims of negligence and intentional infliction of emotional distress.
The decision to perform an autopsy is discretionary, but the coroner is statutorily mandated to investigate all cases involving “unexpected” deaths, La.Rev.Stat. 13:5713(A)(1), “sudden deaths.” La.Rev. Stat. 13:5713(A)(2), deaths “due to unknown or obscure causes,” La.Rev.Stat. 13:5713(A)(3), and a death that occurs in a hospital within twenty-four hours of admission, La.Rev.Stat. 13:5713(A)(7). Subsequently, based upon his investigation of deaths which occur in these manners, the coroner “shall furnish a death certificate” stating “as best he can the cause and means of death.” La.Rev.Stat. 13:5713(E)(1). Clearly, the death of a child shortly after admission to the hospital required a coroner investigation and, therefore, issuance of a death certificate by the coroner. Thus, the plaintiffs’ allegations of the circumstances of the child’s death and failure of the coroner’s office to issue the mandated death certificate stating the cause of death adequately establish (for purposes of an exception of no cause of action) the lufirst two elements (duty and breach of that duty) of a negligence claim. In addition, the plaintiffs’ allegations that the coroner misplaced the body for a long period of time and then cremated and buried the body without notification to the family, thus preventing them from obtaining an independent autopsy or providing a Christian burial, sufficiently establishes the cause-in-fact element, the scope of liability element, and the damages element of a negligence claim for purposes of an exception of no cause of action.
Similarly, although a “coroner may hold any dead body for any length of time that he deems necessary,” La.Rev. Stat. 13:5713(B)(3), abuse of such power constitutes the first element of an inten *1154 tional infliction of emotional distress claim. See White, 585 So.2d at 1209-10 (in the context of intentional infliction of emotional distress claim, the first element — extreme and outrageous conduct — may arise from an abuse by an actor in a position of power to affect another’s interests). In this case, the coroner’s legal control over the body put the coroner’s office in the position of power to affect the plaintiffs’ interests. Therefore, the plaintiffs’ allegations that the coroner misplaced the child’s body for nine months before cremating and burying it in a “John Doe” burial site without notification to the family sufficiently pleads for purposes of overcoming an exception of no cause of action the first element (extreme and outrageous conduct) of an intentional infliction of emotional distress claim. In addition, the plaintiffs’ allegations that the coroner’s office deprived them of the opportunity to provide a Christian burial site and has not yet provided the family with the specific location of the grave site sufficiently pleads for purposes of overcoming an exception of no cause of action the second element (the plaintiffs suffered severe emotional distress) of an intentional infliction of emotional distress claim. Finally, in light of the coroner’s 112undisputed control over the child’s body for a long period of time and subsequent disposal of the body without notifying the family, the plaintiffs’ allegation that the coroner’s office repeatedly ignored court orders to preserve the body and efforts to obtain information as to body implicitly indicates that the coroner knew or should have known that the acts and omissions of his office inflicted severe emotional distress upon the plaintiffs. See White, 585 So.2d at 1209 (elements required to recover for intentional infliction of emotional distress).
The coroner’s office fervent denial of the plaintiffs’ version of events is inapposite at this point in the proceedings. The only facts before us on an exception of no cause of action are those alleged by the plaintiffs in their petition and we must assume those facts to be true. Accordingly, upon de novo review, we find that the plaintiffs sufficiently allege causes of action for negligence and intentional infliction of emotion distress in their supplemental and amended petition. Therefore, the district court erred in granting the exception of no cause of action.

Conclusion

The judgment of the trial court is reversed.
REVERSED.

. Both Dr. Minyard and Dr. Jeffrey Rouse, the coroner-elect, were initially named as defendants in their professional and personal capacity, but Dr. Rouse was subsequently dismissed as a defendant by the plaintiffs. Thus, this exception of no cause of action pertains only to Dr. Minyard in his professional capacity; the lawsuit against him in his personal capacity is unaffected.

. In response to the interjection by the district court judge that "your clients didn’t have custody of the child at the time — ,” plaintiffs’ counsel explained that custody was “turned back over to the parents” within a couple of days of the child’s death and, therefore, any decisions pertaining to cremation and disposal of the body necessarily involved the parents. The district court commented: "I don’t know how you get custody of someone that has passed away, but anyway.”