Before CARAWAY, MOORE and LOLLEY, JJ.
 

 MOORE, J.
 

 |, Martha Andrus, the mayor of the City of Grambling, appeals one judgment that ordered her to reinstate at full duty, and to take no adverse employment action against, her city accountant/business manager, Rev. Willie Mabry, and her city clerk, Pamela Stringfellow; and another that found that she violated an earlier TRO by letting them back into the office but not allowing them to perform their job functions. For the reasons expressed, we affirm.
 

 Factual Background
 

 Ms. Stringfellow had worked for the city since 1982 and served as city clerk since 1992. She testified that as city clerk, her job included collecting traffic fines, license fees, taxes and water bills. She admitted that in January 2008, at the direction of the city council, she wrote a check on the city’s account for $11,937.55 without advising the mayor and, contrary to internal
 
 *1077
 
 policy, without obtaining the mayor’s signature on the check. The following month, the mayor moved her out of city hall and to the fire station. After litigation that was ruled inadmissible in this case, the mayor returned her to city hall in June 2008 but did not allow her to do her normal duties, such as collecting fines, signing checks and going to the bank. Ms. String-fellow also testified that sometime in 2008, the State Police began an investigation into financial irregularities in Grambling city hall; she testified that she cooperated but never reported to State Police that any funds were missing. She admitted that as city clerk, she should be aware of and responsible for any missing money.
 

 lain November 2008, Mayor Andrus again moved Ms. Stringfellow out of her office and into the foyer, facing the restroom. Ms. Stringfellow complained that she has not been permitted to collect any fines or water payments and hence cannot do her job as city clerk.
 

 In late 2008, with the approval of the city council, Mayor Andrus hired Mabry as city accountant/business manager, chiefly to amend the city’s 2008 budget and prepare its 2009 budget. Mabry was a 1972 graduate of Southern University and had worked for CPA firms in Baltimore and New Orleans, and in the city of Baltimore’s finance department, but admitted he was not a CPA, having taken the test and failed.
 

 Mabry’s first day of work at Grambling was November 21, 2008. In reviewing the city’s cash receipts, he discovered a lot of missing money, including over $47,000 in water bills that had been received but never deposited into the city’s bank account. He prepared a review of cash receipts with payment summaries in mid-December (introduced at trial as Exhibit P-1, but with a cover letter dated February 25, 2009), handed this to the mayor and advised her that some theft had occurred. He also testified that during their meeting, the mayor phoned Grambling’s police chief, Tommy Clark, who in turn phoned the DA’s office; as a result of this meeting, the mayor placed the deputy city clerk, Elizabeth Jones, on leave without pay (the titular clerk, Ms. Stringfellow, was still sitting in the foyer and not handling city funds). Mabry testified that he separately met with Trooper Roach of the State Police a few days later, showed him the summary, and advised him that certain funds were not accounted for.
 

 laMabry complained that after these meetings, the mayor’s communications with him became “vague” and he was unable to perform his job. He wanted to use the accounting software QuickBooks to detail the 2009 budget, but this was not on the city’s computer server. (It was, he admitted, on deputy clerk Elizabeth Jones’s desktop PC.) Without it, he said, he simply could not amend the 2008 budget or prepare the '09.
 

 On December 80, the mayor sent Mabry a letter of termination, effective immediately. However, in a rare New Year’s Eve action, the Grambling city council unanimously passed a resolution declaring him a whistleblower for “exposing inconsistencies regarding the city’s finances” to the may- or, city police, State Police and city council, and lodging a “no confidence” vote against Mayor Andrus.
 

 Litigation and Subsequent Events
 

 Mabry and Stringfellow filed this suit for injunctive relief, TRO and protective order on February 19, 2009. They requested a TRO and preliminary injunction enjoining the mayor from terminating them from their respective positions and from interfering with or prohibiting them from performing their jobs, including discontinuing their pay. They also sought a protective order to “protect their rights
 
 *1078
 
 with the City of Grambling until and unless action related thereto is taken by the city council[.]”
 

 At a hearing on March 3, the court granted the mayor’s motion for continuance and accepted the parties’ stipulation that, pending a full hearing, the mayor would be restrained and enjoined from taking any adverse employment action against the plaintiffs and that a protective order | ¿would issue. The court signed a judgment on rule that date.
 
 [1]
 

 On March 5, the plaintiffs filed a rule for contempt, alleging that on March 4, a Lincoln Parish deputy served Mayor Andrus with the court’s judgment on rule and they presented themselves for work, but the mayor refused to let them enter their respective workplaces, an action witnessed by two city council members.
 

 At a hearing on the TRO on March 13, the plaintiffs testified as outlined above, and city council member Edward Jones confirmed the facts and chronology of the incidents. Trooper Roach testified that the State Police had begun an investigation into Grambling’s finances in February 2008. Mayor Andrus did not testify; through counsel she invoked her right against self-incrimination.
 

 Counsel for the mayor argued that the plaintiffs were not entitled to “whistleblower” status under La. R.S. 23:967 because they did not first “advise the employer of the violation of law.” Counsel for the plaintiffs urged that the broader statute for public employees, La. R.S. 42:1169, protected them from adverse employment action. The district court took the matter under advisement and, in the interest of judicial economy, began the contempt rule that afternoon.
 

 On the contempt rule, which was not completed until March 20, two deputies testified that upon being served with the judgment on rule, Mayor |sAndrus exclaimed this was “not what she agreed to,” and she would have to call her attorney; she allowed the plaintiffs to enter the office, but their desks had been cleared and their computers disconnected.
 

 Ms. Stringfellow testified that on March 4, another employee was sitting at her old desk; Mabry testified that the bottom half of the Dutch door to the administrative office was locked, so he could not get to his desk. Both admitted, however, that the mayor did not physically block their entry or tell them not to work, and both have received their regular pay. Mabry also admitted that Business Technology Group, a tech company hired to manage the city’s computers, had struggled for days and finally installed the tax software onto Ms. Stringfellow’s PC, and that he had been able to log onto his own desktop PC the preceding Tuesday.
 

 Action of the District Court
 

 The district court rendered two judgments. In the first, dated April 7, the court noted the two “whistleblower” statutes, but held that the public statute, R.S. 42:1169, afforded no judicial relief, only an administrative remedy. By contrast, the general statute, R.S. 23:967, applied to all
 
 *1079
 
 employees and created a cause of action. The court found that Mabry satisfied every essential element of § 967: he advised the mayor of a workplace act or practice that constituted a violation of state law, disclosed it to outside authorities, did so in good faith, and the mayor’s actions were reprisals under § 967 C(l). Further, because the missing funds strongly indicated theft or malfeasance in office, Mabry effectively advised the mayor of an
 
 actual
 
 violation of state law; and, in the absence of evidence |fithat Mabry’s job performance was in any way deficient, the action against him was a reprisal. The court rendered judgment reinstating Mabry to his position and a restraining order prohibiting the mayor from taking any further reprisal against him.
 
 [2]
 

 As to Ms. Stringfellow, the court found that she was not entitled to whistleblower status because she did not advise the may- or of any violation of law. Nevertheless, the court found that the mayor must administer city departments “in conformity with applicable provisions of state law,” La. R.S. 33:404 A(l). The court enumerated the statutory duties of a city clerk, finding that Mayor Andrus had prevented and inhibited Ms. Stringfellow from performing
 
 some
 
 of them, including keeping and preserving city records and books, especially “reporting, auditing, or having any access to city funds before delivery thereof to the treasury.” Finding that this action impermissibly infringed on Ms. Stringfellow’s legal duties, the court rendered judgment restraining the mayor from interfering with her job duties, and ordering her reinstated to her job.
 
 [3]
 

 |7In the second judgment, dated April 14, the court found constructive contempt based on “wilful disobedience of any judgment, order, mandate or process of court.” La. C.C.P. art. 224(2). The court noted that Mayor Andrus had already been held in contempt in a separate case for violating a consent decree involving Ms. String-fellow. Reiterating the facts, the court found that nothing had really changed with Ms. Stringfellow, and that both plaintiffs were relegated to the hall, denied access to their computers, records, papers and everything else necessary to perform their jobs. The court conceded that the earlier judgment on rule “was not artfully drafted
 
 *1080
 
 by counsel and did not clearly detail and itemize the actions the Mayor was prohibited from taking or the affirmative actions she was required to take,” but that these deficiencies were corrected in the final judgment. Finding an adverse employment action, the court held the mayor in contempt, sentencing her to 60 days in parish jail; execution was deferred and the mayor could purge herself of the charge by “immediately, fully and completely complying with all orders” of the court.
 

 The mayor has appealed each judgment separately,
 
 [4]
 
 raising two assignments of error.
 

 Discussion: Application of Whistleblower Statute
 

 By her first assignment of error, Mayor Andrus urges the court erred in ruling that Mabry was a whistleblower and entitled to protection under La. R.S. 23:967. She urges that there was no evidence to prove that Mabry ] ¡/‘notified his employer of any violation of law,” and this facet of § 967 was strictly enforced in the unreported federal opinion of
 
 Wells v. City of Alexandria,
 
 2004 WL 909735 (5 Cir.2004),
 
 cert denied,
 
 543 U.S. 1000, 125 S.Ct. 607, 160 L.Ed.2d 458 (2004). In support, she cites the cross-examination of Trooper Roach, who said that neither plaintiff ever told him there was a violation of law, and that in fact it was Mayor Andrus who initiated the investigation, in which the plaintiffs merely cooperated. Going outside the record, the mayor also argues that she was entitled to fire Mabry because after six weeks on the job he had still not produced a projected 2009 budget.
 

 The plaintiffs respond by restating much of the court’s April 7 ruling and arguing that the district court committed no manifest error in finding either that Mabry advised the mayor of a violation of law or that the mayor’s actions constituted reprisals. In support they cite
 
 Fondren v. Greater New Orleans Expy. Comm’n,
 
 03-1383 (La.App. 5 Cir. 4/27/04), 871 So.2d 688, in which the court reversed a summary judgment to let the plaintiff prove that he really did advise the employer of a violation of law. They also submit that the citation of
 
 Wells v. City of Alexandria,
 
 was improper under FRAP 32.1(a), under which a federal court may prohibit, in judicial orders, the citation of unpublished opinions issued prior to January 1, 2007.
 

 Louisiana’s “whistleblower” statute, R.S. 23:967, provides in pertinent part:
 

 § 967. Employee protection from reprisal; prohibited practices; remedies.
 

 A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
 

 |fl(l) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
 

 (2) Provides information to or testifies before any public body concerning an investigation, hearing, or inquiry into any violation of law.
 

 (3) Objects to or refuses to participate in an employment act or practice that is in violation of law. * * *
 

 C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
 

 (1) “Reprisal” includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section]/] * * *
 

 
 *1081
 
 (2) “Damages” include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal. * * *
 

 In order to qualify for whistleblower protection under this statute, the plaintiff must prove an actual violation of a state law, not just a good faith belief that a law was broken.
 
 Accardo v. Louisiana Health Services & Indem. Co.,
 
 2005-2377 (La.App. 1 Cir. 6/21/06), 943 So.2d 381;
 
 Hale v. Touro Infirmary,
 
 2004-0003 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210;
 
 Fondren v. Greater New Orleans Expy. Comm’n,
 
 supra; Kristen D. Peel, “Louisiana’s Revised Statutes 23:967: The Questionable Interpretation of Louisiana’s Whistleblower Statute and a Solution for the Courts,” 34 S.U.L.Rev. 103, 116-119 (Spring 2007). Moreover, the employee must first “advis[e] the employer of the violation of law” before the statutory remedies take effect. R.S. 23:967 A.
 

 Mabry testified that as a result of his examination, he found over $47,000 missing, and he advised the mayor not only of this fact but that |m“some theft had occurred.” His review of cash receipts (excluding the subsequent cover letter) does not use the words “theft” or “malfeasance in office.” However, several pages are marked “missing dates,” “not on G/L” (general ledger) and “not on bank statement,” indicating that numerous cash payments to the city had disappeared. Trooper Roach confirmed that while Mabry was cooperating in the investigation, he never advised
 
 him
 
 (Trooper Roach) that a crime had occurred; however, this obviously has no bearing on whether Mabry advised
 
 his employer
 
 of the violation. Trooper Roach also testified that just from looking at Exhibit P-1, he could not determine that a state law had been violated, but the main thrust of his testimony was to avoid divulging any findings that might compromise the ongoing investigation. On this evidence the district court was entitled to find that Mabry first advised his employer of an actual violation of state law and then provided information to the State Police about that violation. These findings satisfy the requirements of R.S. 23:967. The court did not err in extending whistleblower protection to Mabry.
 
 [5]
 

 This assignment of error lacks merit.
 

 Finding of Contempt
 

 By her second assignment of error, Mayor Andrus urges the court erred in holding her in contempt for a violation of the previous order. In support, she cites portions of the plaintiffs’ cross-examination admitting they were never prohibited from entering their offices, they never tried to | n talk to the mayor, and they did not actually try to reclaim their old desks. The mayor maintains that the offices have always been open to them and, in fact, part of the requested software has been installed on the- server. Finally, she contends that by the court’s own admission, the judgment on rule was “not artfully drafted” and thus too ambiguous to support a finding of contempt.
 
 LeBlanc v. LeBlanc,
 
 2006-1307 (La.App. 3 Cir. 3/7/07), 953 So.2d 115. She concludes that she did not willfully disobey the judgment on rule and asks this court to reverse the finding of contempt.
 

 The plaintiffs respond that the court committed no manifest error in finding that the mayor willfully, and through the
 
 *1082
 
 acts of others, prevented them from performing their jobs.
 

 A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Constructive contempt of court includes,
 
 inter alia,
 
 willful disobedience of “any lawful judgment, order, mandate, writ, or process of the court.” La. C.C.P. art. 224(2). Constructive contempt must be based on a finding that the person violated an order of the court “intentionally, knowingly, and purposefully, without justifiable excuse.”
 
 Lang v. Asten Inc.,
 
 2005-1119 (La.1/13/06), 918 So.2d 453;
 
 Midyett v. Midyett,
 
 32,208 (La.App. 2 Cir. 9/22/99), 744 So.2d 669. The court is vested with great discretion to determine whether a party should be held in constructive contempt for violating a court order.
 
 Fink v. Bryant,
 
 2003-0987 (La.11/28/01), 801 So.2d 346. The appellate court will reverse only on a showing of abuse of that discretion.
 
 Midyett v. Midyett, supra.
 

 The district court carefully outlined the testimony, concluding that “nothing has changed” since the original judgment: QuickBooks has not been installed, other employees continue to perform Ms. String-fellow’s job duties, both plaintiffs remain seated in the hall, and at various times both plaintiffs’ doors have been locked. The court aptly noted that its initial judgment, drafted by counsel, was not artful, and seems slightly more detailed than the stipulation orally announced by plaintiffs’ counsel. Nevertheless, it clearly directed the mayor to (1) immediately return and restore the plaintiffs to their positions of employment, and (2) give them full and complete access to their respective offices and to all equipment and materials necessary and proper to perform their job functions effectively. Admittedly, the mayor never told the plaintiffs that they were forbidden to do their jobs, did not eject them from city hall, and did not physically block their entrance into their old offices. However, by consigning them to the hall, installing other employees at their desks, and reassigning their job duties, the mayor failed to honor the prior judgment in circumstances showing that her actions were intentional, knowing, purposeful and without probable cause. The district court did not abuse its discretion in finding a constructive contempt of court.
 

 With the district court, we are reluctant to enjoin the mayor from her statutory duty of operating the city. However, at the hearing on March 3, the mayor stipulated to the essential element of the judgment on rule, restraining and enjoining her from taking any adverse employment action | ^against the plaintiffs. On this record, the district court did not abuse its discretion in finding that the mayor willfully disobeyed this lawful order. This assignment of error lacks merit.
 

 Conclusion
 

 For the reasons expressed, we affirm the judgments of the district court. Appellate costs of $243.00 are to be paid by Martha Andrus, Mayor of Grambling. La. R.S. 13:5112.
 

 AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before BROWN, WILLIAMS, CARAWAY, MOORE and LOLLEY, JJ.
 

 Rehearing denied.
 

 [1]
 

 . The judgment on rule included a TRO that restrained the mayor "from terminating or attempting to terminate” the plaintiffs; a preliminary injunction that restrained her "from terminating or taking any adverse employment actions against” the plaintiffs; a protective order "that there shall be no adverse employment actions taken against [the plaintiffs] in their employment positions" without the express approval of the city council; and an order that both plaintiffs be "immediately returned and restored to their positions of employment” with the city "with full and complete access to their respective offices and to all equipment and materials necessary and properly
 
 [sic
 
 ] [to] effectively perform their respective job duties.”
 

 [2]
 

 . The portion of the judgment reinstating Ma-bry ordered the mayor to grant him "full and complete access to his administrative office and all equipment necessary or expedient to properly perform his duties, including a computer, QuickBooks, computer software, financial and accounting books and records, bank statements, payroll records, and any and all documentation pertaining to the fiscal affairs of the city[.]” The injunction prohibited the mayor from taking "any further reprisal or discriminatory action” against Mabry under R.S. 23:967, "no action that prevents or interferes with the reinstatement of Willie E. Ma-bry as city accountant and business manager,” and directed her to take "all necessary and expedient action as Mayor to fully and completely implement these orders,” under penalty of contempt.
 

 [3]
 

 . The portion of the judgment reinstating Ms. Stringfellow ordered the mayor to grant her "full and complete access to an appropriate office in which the records of her office shall be kept, preserved, and maintained, and in which all funds from any source shall be reported to and audited by her before delivery to the treasurer,” and that she "be furnished with all furniture, equipment, and material necessary for her to perform her duties, including, but not limited to: a desk, file cabinets and space, computer and computer software, QuickBooks, property tax software, books, papers, and documents.” The injunction prohibited the mayor from "preventing, inhibiting, or interfering with Pamela String-fellow in the discharge or performance of her duties” as municipal clerk, and ordered the mayor "to take all action necessary and expedient to fully and completely implement these orders immediately,” under penalty of contempt.
 

 [4]
 

 . The mayor initially sought supervisory review of the April 14 judgment, but this court found that it was an appealable final judgment and remanded the matter for perfection as an appeal.
 

 [5]
 

 . We note that the mayor has not contested on appeal the portion of the judgment ordering her to reinstate Ms. Stringfellow, in spite of the finding that Ms. Stringfellow was not entitled to whistleblower status. We express no opinion as to the validity of this aspect of the judgment.