## NOT DESIGNATED FOR PUBLICATION

### STATE OF LOUISIANA

### COURT OF APPEAL

### FIRST CIRCUIT

### 2021 CW 1605

### CHARLIE A. CAMPBELL KELLY

### VERSUS

### LOUISIANA DEPARTMENT OF VETERANS AFFAIRS AND DAVID LACERTE, IN HIS CAPACITY AS SECRETARY

Judgment Rendered: **SEP 1 4 2022**

\* \* \* \* \* \* \*

On Application for Supervisory Writs from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 632,031
Honorable Donald R. Johnson, Judge Presiding

\* \* \* \* \* \* \*

Douglas A. Littlejohn
Baton Rouge, Louisiana

Attorney for Plaintiff/Respondent,
Charlie A. Campbell Kelly

Jeff Landry
Attorney General
Jeannie C. Prudhomme
Matthew Roth
Assistant Attorneys General
Baton Rouge, Louisiana

Attorneys for Defendants/Relators,
State of Louisiana, through the
Department of Veterans Affairs, and
David LaCerte

\* \* \* \* \* \* \*

BEFORE: WHIPPLE, CJ., CHUTZ, AND PENZATO, JJ.

**PENZATO, J.**

In this supervisory writ application, defendants, the State of Louisiana, through the Department of Veterans Affairs, and David LaCerte (collectively, "defendants"), seek review of the trial court's denial of their Motion for Summary Judgment concerning a claim asserted by plaintiff, Charlie A. Campbell Kelly ("plaintiff"), under the Louisiana Whistleblower Act ("LWA") - La. R.S. 23:967 - as well as a claim of intentional infliction of emotional distress. For the following reasons, we reverse the trial court's October 22, 2021 judgment, render summary judgment in defendants' favor, and dismiss plaintiff's claims against defendants with prejudice.

## FACTS AND PROCEDURAL HISTORY

In October 2011, plaintiff was hired by the Louisiana Department of Veterans Affairs ("LDVA") as the Long Term Health Care Administrator for the Southeast Louisiana War Veterans Home ("LDVH" or "the Home"), a long-term care nursing facility in Reserve, Louisiana. At the time, plaintiff's supervisors were David LaCerte ("LaCerte"), LDVA Secretary, and Kevin Butler ("Butler"), LDVA Deputy Assistant Secretary. As administrator of the facility, plaintiff had general "administrative authority and responsibility for the direction, control, and management of all activities within [the Home]."

In an April 9, 2013 "Improvement Letter," Butler noted to plaintiff that "[i]t is apparent that you have dysfunctional and counterproductive relationships with a number of key members of your staff[,]" that due to plaintiff's inability to communicate with her human resources staff, the Home had "the largest number of vacant positions of all the LDVA facilities[,]" that plaintiff did not have proper authorization for various travel expenditures, that she has failed to complete the required annual ethics training, and that she, generally, is not properly using the resources available to her to successfully manage the Home. Butler specifically

2

stated he "expect[ed] to see a marked improvement in your job performance and professional relationships as noted in this letter[,]" but further stated such a letter was not to be considered disciplinary action.

Despite the expectations noted in the April 9, 2013 "Improvement Letter," plaintiff was terminated from her position with LDVA on July 19, 2013. According to a letter signed by LaCerte and hand delivered to plaintiff, she was terminated due to her poor performance, including but not limited to failing to improve staffing levels at the Home, improper activity related to patient safety, lack of communication with residents, their family members, and community stakeholders, implementing unnecessary restraints on patients' access to hygiene supplies, poor supervision of subordinates, lack of professional decision making, using LDVA funds on expenditures for which she had no approval, and an apparent ethics violation of La. R.S. 42:1113 by granting LDVA hospice contracts to a service in which plaintiff's mother held a substantial interest.

On July 18, 2014, plaintiff filed a Petition for Damages ("Petition") against defendants, claiming that she was terminated in violation of "Louisiana's anti-reprisal law, [La. R.S.] 23:967." Plaintiff further contended that the defendants' conduct "was extreme, outrageous, sudden, and unexpected, and constituted the tort of intentional infliction of emotional distress[.]"

On July 22, 2021, defendants filed the underlying Motion for Summary Judgment arguing, in general, that "[p]laintiff's claims of whistleblower retaliation and intentional infliction of emotional distress fall far short of establishing a *prima facie* case." Defendants contended plaintiff could not show actual violations of state law or that she "ever even blew a whistle." Further, defendants argued plaintiff's claims for intentional infliction of emotional distress lacked support, and were "easily refuted by a breadth of Louisiana [j]urisprudence." In support of their

3

motion, defendants submitted plaintiff's deposition and the affidavit of Dustin Guy, Deputy Chief of Staff of LDVA, to which was attached contents of plaintiff's personnel file.

Plaintiff opposed the motion, arguing that there existed genuine issues of material fact in dispute, precluding summary disposition of this matter. She further argued that "the totality of plaintiff's testimony, pleadings, responses to discovery[,] and exhibits all show that she can meet her jurisprudential burden at trial by establishing the *prima facie* elements of [La. R.S.] 23:967." (Emphasis added.) In opposition to the motion, plaintiff submitted her deposition; her Responses to Defendants' Interrogatories, Request for Admission of Facts and Request for Production of Documents; and a July 3, 2013 e-mail from plaintiff to Butler. LaCerte was copied on the e-mail, and forwarded it to Robert Hayes and Guy.

The matter came for hearing on October 4, 2021 and, after taking the matter under advisement, on October 22, 2021, the trial court issued Written Reasons for Judgment and a judgment denying defendants' Motion for Summary Judgment. Following timely Notice of Intent to Apply for Supervisory Writs, as well as the setting of a return date by the trial court, defendants timely sought supervisory review of the trial court's October 22, 2021 judgment.[1]

## ASSIGNMENTS OF ERROR

Defendants contend the trial court committed error:

1. By denying their Motion for Summary Judgment regarding plaintiff's LWA claim;

2. By denying their Motion for Summary Judgment regarding plaintiff's claim of intentional infliction of emotional distress; and

3. By relying on and adopting verbatim plaintiff's Proposed Findings of Fact and Conclusions of Law, which included "facts" that were not

---

[1] Pursuant to the requirements of La. C.C.P. art. 966(H), a Notice of Briefing Schedule was issued to the parties on April 25, 2022.

4

established in plaintiff's Opposition, and by relying on plaintiff's "Exhibit D," which was also not submitted with her Opposition.

## LAW AND DISCUSSION

### Motions for Summary Judgment

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).

The burden of proof is on the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. *Durand v. Graham*, 2019-1312 (La. App. 1st Cir. 6/12/20), 306 So.3d 437, 440.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So.3d 607, 610. Because it is the applicable

5

substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Durand*, 306 So.3d at 440.

### *Improper Consideration of Summary Judgment Evidence*

In their third assignment of error, defendants argue the trial court impermissibly relied on and adopted verbatim plaintiff's proposed Findings of Fact and Conclusions of Law, which included "facts" that were not established in plaintiff's Opposition, and by relying on "Exhibit D," a document not submitted with her Opposition, prohibiting defendants the opportunity to object. Though identified last, we will address this assignment of error first, as it relates to the evidence presented on motions for summary judgment.

Following the October 4, 2021 hearing on defendants' motion, the trial court instructed both defendants and plaintiff to submit proposed findings of fact and conclusions of law. Plaintiff's submission included the following sentence: "The Office of Inspector General did conduct an investigation of LDVA and issued a finding of fact to the public [o]n January 29, 2016 stating that then Secretary David LaCerte '... engaged in questionable organizational, hiring, and pay practices that appear to have contributed to an environment of little accountability.'" In support of this statement, plaintiff cited "Exhibit D," *Report Highlights, Department of Veterans Affairs, Joint Investigation* issued by the Louisiana Legislative Auditor and the Office of the Inspector General, dated January 27, 2016. This document was attached to plaintiff's Proposed Findings of Fact, yet was not submitted with plaintiff's opposition memorandum to defendants' motion for summary judgment. The report's notation and inclusion in plaintiff's Proposed Findings of Fact and attachment thereto was its first appearance as a supporting attachment.

The only documents that may be filed in support of or in opposition to the motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Comment (C) to Article 966(A)(4) specifically notes the list of documents that may be filed in support of or in opposition to a motion for summary judgment is "exclusive." Additionally, Article 966(D)(2) states the trial court "may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider." By considering "Exhibit D," the trial court deprived defendants the opportunity to object in a reply memorandum, as required by Article 966(D)(2), to an exhibit that is not within the exclusive list of documents which may be filed in support of or in opposition to a motion for summary judgment. See La. C.C.P. art. 966(A)(4).

Although the trial court erred in considering and noting Exhibit D in its Conclusions of Law, given the *de novo* standard of review used by appellate courts in reviewing motions for summary judgment, in our review, this court will only consider the documents actually filed in support of or in opposition to defendants' Motion for Summary Judgment. See *Alvin Fairburn & Associates, LLC v. Harris*, 2020-1290, 2020-1291 (La. App. 1st Cir. 10/18/21), 2021 WL 4843584, at *4. Accordingly, consideration will not be given to plaintiff's Exhibit D referenced above.

*LWA Claim*

Defendants' first assignment of error challenges the trial court's denial of their Motion for Summary Judgment, arguing plaintiff has not submitted any evidence showing she can carry her burden of establishing a *prima facie* case under the LWA.

The LWA, La. R.S. 23:967, provides in pertinent part:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

The LWA protects employees against reprisal from employers for reporting or refusing to participate in illegal work practices. *Derbonne v. State Police Commission*, 2019-1455 (La. App. 1st Cir. 10/14/20), 314 So.3d 861, 870, writ denied, 2020-01323 (La. 2/17/21), 310 So.3d 1152. The statute targets serious employer conduct that violates the law. *Causey v. Winn-Dixie Logistics, Inc.*, 2015-0813 (La. App. 1st Cir. 12/23/15), 186 So.3d 185, 187, writ not considered, 2016-0167 (La. 3/24/16), 190 So.3d 1187. To prevail under the statute, the plaintiff must establish an actual violation of state law; a good faith belief that a violation occurred is insufficient. *Id;* see also *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4th Cir. 11/3/04), 886 So.2d 1210, 1215 (the LWA provides a remedy to

employees for employers whose practices are in actual violation of the law, "and not simply practices disagreed with or found distasteful by the employee.").

In addition, the plaintiff must establish that the employer, not simply its employees, violated state law. See *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015); see also *Dillon v. Lakeview Regional Medical Center Auxiliary, Inc.*, 2011-1878 (La. App. 1st Cir. 6/13/12), 2012 WL 2154346, at *5 & n.8 (unpublished), writ denied, 2012-1618 (La. 10/26/12), 99 So.3d 651 (observing that "it could be concluded that the employer must be the actor who violated the law, in order for there to be a cause of action under" La. R.S. 23:967, and that "there is no indication in the provisions of [La.] R.S. 23:967, in referencing an 'act or practice' of the employer, that such would encompass unauthorized acts of its employees").

Thus, to defeat defendants' Motion for Summary Judgment as to her LWA claim, plaintiff must demonstrate that a genuine issue of material fact exists that: (1) defendants violated Louisiana law through a prohibited workplace practice; (2) she advised defendants of the violation; (3) she then disclosed or threatened to disclose the prohibited practice or objected to or refused to participate in the prohibited practice; and (4) she was terminated as a result of the threat to disclose or because of the disclosure of the prohibited practice or her objection to or refusal to participate in the prohibited practice. See *Melancon v. Town of Amite City*, 2018-0442, 2018-0443 (La. App. 1st Cir. 9/24/18), 261 So.3d 7, 10.

In support of their motion for summary judgment, defendants cite the following portions of plaintiff's deposition:

> Q:     Was it your understanding at that time that all or some of these discrepancies were a violation of State law?
>
> A:     I don't know the law, so I assume some of them had to have been, but I'm not a lawyer, so that's why I reported it to my supervisor.

* * *

Q:   At any point did you ever provide information to or testify before any public body conducting an investigation, hearing[,] or inquiry into any violation of State law?

A:   Not that I recall....

Q:   Did you ever send a report or complaint to any public body conducting an investigation, hearing[,] or inquiry?

A:   No, not that I recall.

Q:   Did you ever report any of these perceived violations to any media outlets?

A:   No.

Defendants contend this testimony establishes an absence of factual support that plaintiff will be able to prove that defendants violated Louisiana law, she advised defendants of an actual state law violation, and she made an actual disclosure to any outside entity, agency, or public body. Defendants further contend that it is not possible that LDVA retaliated against plaintiff for a disclosure, or threatened disclosure, it had no knowledge or awareness of.

In opposition, plaintiff contends that she articulated and identified violations of state law in her responses to defendants' formal discovery requests. She cites her following response to defendants' interrogatory regarding her allegation of "Veteran Abuse and Neglect by LDVH employees":

**RESPONSE TO INTERROGATORY NO. 9:**

Upon information and belief, [Kelly] noted the following conduct in support of her allegations:

1. October 2011 – Failure to properly care Veteran 334 by Yvette Joseph;

2. October 2011 – Failure to properly care Veterans 0497 and 0441 by Bertha Joseph;

3. December 2011 – Failure to properly care of patient by Tracey Cook.

10

In other discovery responses, plaintiff identified the following conduct:

(1) purchases from the Recreation Fund that were suspicious with checks written directly to the Activity Director for large amounts without receipts;

(2) 6.5gs given with insufficient verification of employment; an application that the signature was completely differently than any signature we had on file; the contact person on employee reference checks were now current employees that did not list that place of employment on their application; and, applications completely missing from files. Additional findings included, but were not limited to, nurses and/or other staff members promoted to administrative nurse positions or higher paid positions, but then found to be demoted and still retain the same salary;

(3) an employee who served as a direct care worker had lied on her employment application regarding any criminal offenses or convictions. The employee's criminal background check reflected that she had a charge of aggravated battery with a dangerous weapon;

(4) discrepancies between what was being reported by several employees and the time actually worked;

(5) the Activities Department was engaged in fraudulent conduct with the respect to the utilization of vendor information in connection with the entertainment for patients at the facility;

(6) unethical hiring practices including without limitation, the restricted circulation of available positions at the facility and preferential consideration and treatment for applicants of family members.

Furthermore, citing a specific portion of her deposition testimony, plaintiff claims she informed her supervisors of these alleged violations of state law:

Q: What discrepancies can you recall about Ms. Sonya Aucoin's department?

A: Ms. Aucoin's activities, she would go into the resident funds and get money addressed to her without receipts, so I questioned that. Her timecard, same with the hour calculations[,] were off. Vacation time with Sonya Aucoin, she had exceeded the amount of days she was allowed to take through the year and I questioned that. That's about all I can recall at the moment.

Q: And you brought this up with her?

A: I brought it up with her and I brought it up with my supervisor.

Q: That being Kevin Butler?

11

A:      Correct, and the HR Director, Brad and DVA.

Q:      Who is that?

A:      Dustin Guy.

Q:      What was their response?

A:      It seems like as far as Sonya went with the vacation days, Kevin told me to overlook it, basically to let her have the days off. The calculations I was told to give to Brad Lemoine who is the auditor, which I did, and I also let David LaCerte know that I had given him the calculations for payroll. And her employment file, her pay grade, the way it increased it looked very suspicious, so I gave it to Brad Lemoine.

Q:      What do you mean it looked suspicious?

A:      She went from making close to $10 an hour to close to $20-something in a short period of time. I think it was 10 when she started, but don't quote me on the 10. It was like a big difference.

Additionally, plaintiff claims she informed the Office of the Inspector General of the existence of workplace acts or practices at the Home allegedly in violation of Louisiana law:

Q:      Okay. Now earlier I think you had testified, if I'm not mistaken, that you had made a report to the Office of the Inspector General regarding the activities that you witnessed at the facility that you believe were violations of State law; is that correct?

A:      Yes.

Q:      Okay. Were those the same activities that you listed in your lawsuit against the department, substantially?

A:      Yes.

Q:      Do you know whether or not an investigation ever took place by the Inspector General?

A:      Not while I was there. I know Brad – I had also – Brad Lemoine was our auditor and I had provided the information to him also, but the Inspector General, no, not since I left. Maybe it has.

Plaintiff argues that the above discovery responses and deposition testimony create genuine issues of material fact as to whether defendants violated state law and whether she took steps to report the violations to third parties.

12

Based upon our *de novo* review of the summary judgment evidence, we find plaintiff failed to provide sufficient information from which we can determine which, if any, of the above-identified conduct violated Louisiana law, rather than company policies and/or Civil Service guidelines. Moreover, plaintiff does not name LaCerte, the LDVA, or defendants in general as the ones committing these alleged violations; rather, each of her claims are pointed to co-workers and/or her subordinates at the Home. Thus, we find that with regard to any of the above identified conduct, plaintiff failed to establish that she will be able to meet her burden of proof at a trial on the merits, *i.e.*, that defendants violated Louisiana law through a prohibited workplace practice. Accordingly, as to the requirement that defendants violated Louisiana law through a workplace practice and that plaintiff advised defendants of said violation, plaintiff fails to satisfy these requirements of her LWA claim. There is also no evidence of a threat to disclose to outside authorities. While plaintiff contends her July 3, 2013 e-mail contains such a threat, our review of the e-mail indicates it does not.

Moreover, there is no evidence that plaintiff was terminated as a result of the threat to disclose or because of the disclosure of any prohibited practice. In her deposition, plaintiff testified that she made an anonymous report to the Louisiana Office of the Inspector General. However, she specifically testified that she did not recall when she sent the letter, other that it was sent in 2013, as she did not send it by certified mail because she "didn't want to be tracked." Further, plaintiff testified she did not keep a copy of the letter, that she did not name LaCerte or any of her supervisors in the letter, and that it addressed the questionable transactions and activities occurring at the Home she "felt were illegal." An essential element of an LWA claim is disclosure to "outside authorities," *Mabry v. Andrus*, 45,135 (La. App. 2nd Cir. 4/14/10), 34 So.3d 1075, 1079, writ denied, 2010-1368 (La.

13

9/24/10), 45 So.3d 1079, and plaintiff has produced no evidence showing that the letter disclosed an alleged violation of state law, when it was sent to the Office of the Inspector General, or that the alleged retaliation from defendants occurred after she sent the letter. Further, plaintiff provided no evidence to show that defendants knew of this alleged anonymous letter and, as argued by defendants, "since the letter was sent anonymously, there was no reason for [defendants] to retaliate against [plaintiff] because the identity of the sender would have been unknown to everyone, including [defendants]." Finally, plaintiff has not identified any instance in which she was asked or instructed but refused to participate in an employment act or practice that was in violation of state law.

For these reasons, we find the plaintiff has not identified a genuine issue of material fact or that defendants are otherwise not entitled to judgment as a matter of law concerning her LWA claim.

### Intentional Infliction of Emotional Distress Claim

In their second assignment of error, defendants contend the trial court erred in denying their Motion for Summary Judgment concerning plaintiff's claim of intentional infliction of emotional distress, especially as plaintiff offered no argument or evidence in support thereof.[2]

In order to recover for intentional infliction of emotional distress, a plaintiff must establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). The conduct must be so outrageous in character and so extreme in degree as to go beyond all possible

---

[2] We note that plaintiff presented no evidence or argument in her Opposition, either to the trial court or with this court, to defendants' Motion for Summary Judgment regarding her claim for intentional infliction of emotional distress.

14

bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* Disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. *Id.* at 1210. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time. *Id.* The actions of the disciplinary review, the assigning of difficult tasks, and the reassigning of employees to more stressful positions in and of themselves do not rise to the level of outrageous conduct under *White. Northern v. State, ex rel. Louisiana Dept. of Revenue*, 2015-0226 (La. App. 1st Cir. 11/6/15), 2015 WL 6839998, at *6 (unpublished). Additionally, mere insults, threats, annoyances, petty oppressions, or other trivialities are not enough to trigger liability; rather, persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. *Perrone v. Rogers*, 2017-0509 (La. App. 1st Cir. 12/18/17), 234 So.3d 153, 158, writ denied, 2018-0101 (La. 3/2/18), 269 So.3d 709.

When questioned in her deposition about her claims of intentional infliction of emotional distress, plaintiff states defendants "fired [her] from a job [she] truly loved and felt [she] was good at[,]" though this did not cause her to visit any therapists or counselors, seek medical treatment, or obtain any medication. Though plaintiff states and recounts in her deposition a number of allegedly unkind interactions and statements made to her by subordinates and co-workers, the only stated adverse effect of her termination specifically by defendants is that she "was up throughout the night crying, upset." In fact, when expressly asked whether "any person in a supervisory role [] directly harassed [her]," plaintiff responded, "I don't know – or I really don't recall, not that I don't know."

15

Based upon our *de novo* review of the writ application, and noting the lack of any Opposition by plaintiff concerning her claim of intentional infliction of emotional distress, we find that plaintiff has not shown that defendants' conduct was extreme or outrageous to a degree calculated to cause severe emotional distress to a person of ordinary sensibilities, or that defendants desired to inflict severe emotional distress or that severe emotional distress would be certain or substantially certain to result from their conduct. See *White*, 585 So.2d at 1211.

## CONCLUSION

For the foregoing reasons, we grant the writ and reverse the district court's October 22, 2021 judgment. Accordingly, summary judgment is entered in favor of defendants, the State of Louisiana, through the Department of Veterans Affairs, and David LaCerte, dismissing the claims of plaintiff, Charlie A. Campbell Kelly, against defendants with prejudice.

**WRIT GRANTED. JUDGMENT REVERSED AND SUMMARY JUDGMENT RENDERED.**